COMMONWEALTH *vs.* CARLTON J. BLOW.

Worcester. May 2, 1972. — June 22, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Arrest. Search and Seizure. Probable Cause. Practice, Criminal,* Trial of indictments together.

A finding of probable cause for arrest of the defendant in a criminal case for possession of burglarious tools, and consequent justification for a search of his person, were warranted by evidence that a police officer in a police cruiser saw the defendant riding a

bicycle, and on closer examination saw him in possession of a flashlight with a red tip and other implements useful in a housebreak, that the police officer had just concluded the investigation of a housebreak in which the intruder had been seen with a similar flashlight, that the officer knew that the suspect might possibly be on a bicycle, and that when the defendant saw the officer he got off the bicycle and attempted to run away. [199]

It was error, requiring vacation of convictions, to deny a motion by the defendant to sever with respect to each of four indictments against him, one for robbery, two for breaking and entering in the nighttime and larceny, and one for possession of burglarious implements, where, although all the offences were alleged to have occurred on the same date, each was separate and distinct from and unrelated to the others and it was likely that the jury were influenced by the accumulating effect of evidence as to the offences at the trial of the indictments together. [200–201]

FOUR INDICTMENTS found and returned in the Superior Court on January 8, 1970.

Motions to suppress and sever were denied by the trial judge, *Beaudreau*, J.

*Reuben Goodman* (*Alexander Whiteside, II*, with him) for the defendant.

*James P. Donahue*, Assistant District Attorney for the Commonwealth.

TAURO, C.J.   The defendant appeals from convictions on four separate indictments charging him with the robbery of one Pauline R. Lewon; breaking and entering in the nighttime and larceny of the property of one John J. Kapish; breaking and entering in the nighttime and larceny of the property of one Rita M. Raffman; and the possession of burglarious implements.   On the first three indictments the defendant was sentenced to concurrent terms of not less than nine nor more than fifteen years, and on the fourth indictment a concurrent term of not less than nine nor more than ten years.   All the offences were alleged to have occurred on the same date.   The defendant argues that the trial judge erred in denying his motion to suppress on the ground that the evidence was obtained as the result of a search incident to an unlawful arrest.   He also argues that he was deprived of his right to a fair trial by the failure of the trial judge

to allow his motion to sever with respect to each of the indictments.

1. The validity of the search turns "upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the . . . [defendant] had committed or was committing an offense." *Beck* v. *Ohio,* 379 U. S. 89, 91. *Commonwealth* v. *Mitchell,* 353 Mass. 426, 428. *Commonwealth* v. *Stevens, ante,* 24, 26. See *Commonwealth* v. *Breen,* 357 Mass. 441, 444.

We summarize the evidence at the pre-trial hearing on the issue of probable cause for the arrest. At approximately 5:30 A.M. to 5:40 A.M. on November 7, 1969, Officer Hurley went to the home of John Kapish where he was informed that the house had been broken into. Officer Hurley testified that Kapish described the intruder as small, approximately five to five feet three, wearing dark clothing and "had a flashlight that had a red tip to it." Neither Kapish nor his mother, who also witnessed the intruder, was able to furnish any additional description. Officer Hurley left the house at approximately 5:50 A.M. and then proceeded in his police cruiser down Mill Street. About a quarter of a mile from the Kapish house, he spotted the defendant riding on a bicycle in the same lane. He testified that as he "proceeded along side of . . . [the defendant], protruding from his left pocket was this flashlight with the red . . . [tip]. He had gloves which would have been in his right pocket. There was a screw driver, and also this article in his left pocket. . . . He had on a pullover type jersey with a pocket on the front. These were protruding out . . . [the] side." The defendant was also wearing dark pants and a khaki colored raincoat was draped over the front of the bicycle. Officer Hurley further testified that he "signaled" and "tried to get . . . [the defendant's] attention. When he looked over and he saw me

I went on to bring my vehicle to a halt. At this time he stepped from the bicycle and threw . . . [it] to the ground . . . and he started off on foot." He was apprehended within thirty feet. The defendant was immediately informed that he was "under arrest for possession of burglarious tools at this time." The defendant was brought back to the cruiser where he was informed of his constitutional rights, again notified that he was arrested for possession of burglarious tools, and searched. The search revealed a bottle of pills, two rings, a watch, $178 or $179 in bills and change, a jackknife and another screwdriver.

Officer Hurley testified that before arresting the defendant he heard a police broadcast at approximately 4:30 A.M. concerning the robbery of Mrs. Lewon which described the suspect as "a party who was short in size, who had on a green khaki type jacket, and possibly on a bicycle." Officer Purcell, who investigated the robbery of Mrs. Lewon, did not mention the bicycle in the assignment slip he turned in. He did, however, testify that he told the dispatcher that "the assailant may possibly be on a bicycle." The suspect was described as a man five feet eight, white, heavy build, dark short hair, straight cut, and wearing a waist length khaki jacket and tan trousers.

In these circumstances we believe that there was probable cause to arrest the defendant for possession of burglarious tools. Officer Hurley saw the defendant riding on a bicycle, and on closer examination saw him in possession of a flashlight with a red tip and other implements useful in a housebreak. He had just concluded the investigation of a housebreak in which an intruder was seen with a similar flashlight and he also knew that the suspect involved in the robbery of Mrs. Lewon might possibly be on a bicycle. These circumstances when combined with the defendant's attempted flight are sufficient to establish probable cause. Cf. *Commonwealth* v. *Brown,* 354 Mass. 337, 338. See *Sibron* v. *New York,* 392 U. S. 40, 66–67.

2. The general rule is that the question whether the defendant's "or the Commonwealth's substantial rights will be prejudiced by consolidation or severance for trial rests in the sound discretion of the judge." *Commonwealth* v. *Iannello*, 344 Mass. 723, 727. *Commonwealth* v. *Fancy*, 349 Mass. 196, 204. This court has delineated certain guidelines. "No sound reason can be given why several indictments charging different crimes arising out of a single chain of circumstances should not be tried together. Where several offenses might have been joined in one indictment, and would be proved by substantially the same evidence, or evidence connected with a single line of conduct, and grow out of what is essentially one transaction, and where it does not appear that any real right of the defendant has been jeopardized, it would be a refinement not demanded by the law or by justice to require in all instances a separate trial, simply because separate indictments had been found for each offense." *Commonwealth* v. *Rosenthal*, 211 Mass. 50, 54. *Commonwealth* v. *Slavski*, 245 Mass. 405, 412. *Commonwealth* v. *Maloney*, 348 Mass. 610, 613. See *Commonwealth* v. *Gallo*, 275 Mass. 320, 324. "It has long been the practice . . . to charge a defendant with various and distinct felonies in different counts of the same indictment, when they are of the same general nature and supported by similar evidence, and where the punishments to be awarded are of the same character. *Commonwealth* v. *Iannello*, *supra*, at 727, quoting from *Commonwealth* v. *Mullen*, 150 Mass. 394, 397. See *Commonwealth* v. *Slavski*, *supra*, at 411. The question is simply whether "the separate offences would be proved by 'evidence connected with a single line of conduct, and grow out of what is essentially one transaction.' " *Commonwealth* v. *Maloney*, 348 Mass. 610, 614. We conclude that failure to allow the defendant's motion for severance was prejudicial error.

The offence of robbery differs totally from the other offences charged. The evidence reveals no relationship between the robbery and the other offences. Admittedly, the defendant may have been involved in diverse crim-

inal activity on November 7, 1969, the date all the alleged offences occurred; this does not mean, however, that all this activity was the result of a single line of conduct growing out of one transaction. On the contrary, each indictment charged a separate, distinct and unrelated offence. The only evidence against the defendant on the robbery charge was circumstantial. The defendant was found with a bottle of pills similar to one taken in the robbery of Mrs. Lewon. Her name was not on the bottle, only that of her doctor and the pharmacy where she purchased it. The defendant, like the assailant, was on a bicycle and had a green khaki jacket. There was, however, no eyewitness identification made by Mrs. Lewon of the defendant.

Concerning the Kapish housebreak, the only link between the intruder and the defendant is the flashlight with a red tip. No identification of the defendant was made. It is therefore likely that the jury were influenced by the accumulating effect of evidence as to the separate offences. *Drew* v. *United States*, 331 F. 2d 85, 88–91 (D. C. Cir.). *United States* v. *Quinn*, 365 F. 2d 256, 265 (7th Cir.). *Gregory* v. *United States*, 369 F. 2d 185, 189 (D. C. Cir.). See *McElroy* v. *United States*, 164 U. S. 76, 79–80.

There was no single course of conduct in the several offences charged nor was there proof of guilt by substantially the same evidence. We do, however, adhere to the rule "that evidence of other offenses is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it, but otherwise inadmissible." *Bradley* v. *United States*, 443 F. 2d 1113, 1119 (D. C. Cir.), quoting from *Harper* v. *United States*, 239 F. 2d 945, 946 (D. C. Cir.). See *Commonwealth* v. *Burke*, 339 Mass. 521, 533–534. We therefore conclude that the motion for severance should have been granted.

*Judgments reversed.*
*Verdicts set aside.*