## COMMONWEALTH vs. MURRAY HELFANT.

Middlesex. April 7, 1986. — August 13, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Rape. Administering Drug with Intent of Facilitating Unlawful Sexual Intercourse. Evidence, Redirect examination, Other offense, Relevancy and materiality, Fresh complaint. Practice, Criminal, Severance. Words, "Material particular."*

In the case of a physician charged with administering a drug to a female patient with the intent to overpower her so as to enable him to have unlawful sexual intercourse with her, the requirement of G. L. c. 272, § 11, that, for conviction, the complainant's testimony be corroborated in a "material particular" was fulfilled by the uncontested fact, amply supported by the evidence at trial, that the defendant had injected the complainant with Valium. [218-220]

. Where, at the trial of an indictment for rape, there was ample evidence from which the jury could have found beyond a reasonable doubt that the complainant, as the result of the effects of a certain drug administered to her by the defendant, was incapable of consenting to sexual intercourse, the defendant's conviction could properly be based on proof of only such force as was necessary to accomplish intercourse. [220-222]

Although a physician on trial for rape and for administering a drug to a female patient with the intent to overpower her so as to enable him to have unlawful sexual intercourse with her should have been allowed, during his redirect examination, to explain why he gave the police a false reason for his removal of a hypodermic needle and syringe from the complainant's apartment, the judge's error in rejecting the proffered testimony was nonprejudicial where, inasmuch as the defendant had admitted that he injected the complainant with Valium, the testimony would have related to a subject collateral to the issues being tried and where the explanation, namely, that the complainant and some of her friends used cocaine, would not have detracted from the substantial evidence of the defendant's guilt. [222-224] O'CONNOR, J., dissenting.

At the trial of a physician charged with rape and with administering an injection of a drug to a female patient at her home with the intent to overpower her so as to enable him to have unlawful sexual intercourse with her, the judge did not err in admitting the testimony of two other female patients of the defendant that the defendant, at their respective homes, had injected them with the same drug and had sexually molested

them while they were under the influence of the drug, where the jury were instructed that these witnesses' testimony could be considered only on the "drugging" indictment, not the rape, and only for the limited purpose of proving a "plan or scheme or state of mind" on the part of the defendant, whose intent in administering the drug was the dispositive issue. [224-229] O'CONNOR, J., dissenting.

A judge did not abuse her discretion in denying a defendant's motion to sever for trial two indictments charging him, respectively, with rape and with administering a drug to the complainant with the intent to overpower her so as to enable him to have unlawful sexual intercourse with her, where the two offenses could be proved by evidence connected with a single line of conduct and grew out of essentially a single transaction. [229-231]

The fact that the complaining witness in a rape case had spoken by telephone, shortly after the time of the alleged rape, with several persons to whom she made no mention of rape did not preclude the admissibility, under the fresh complaint doctrine, of her subsequent statements made during a ten to twelve hour period, where there was ample evidence tending to prove that, at the time of the initial conversations, the complainant was under the influence of a Valium injection administered by the defendant and was barely conscious and severely handicapped in her ability to express herself. [231-232]

INDICTMENTS found and returned in the Superior Court Department on October 1, 1983.

The cases were tried before *Elizabeth J. Dolan,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph J. Balliro* for the defendant.

*Fern L. Nesson,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After trial by jury, the defendant, Murray Helfant, was convicted of rape and of drugging a person for unlawful sexual intercourse.[1] The defendant appealed his convictions,

---

[1] General Laws c. 272, § 3 (1984 ed.), provides: "Whoever applies, administers to or causes to be taken by a person any drug, matter or thing with intent to stupefy or overpower such person so as thereby to enable any person to have unlawful sexual intercourse with such person shall be punished by imprisonment in the state prison for not more than three years or in jail or the house of correction for not more than two and one-half years or by a fine of not more than one thousand dollars, or by both such fine and imprisonment in jail or the house of correction."

and we transferred the case to this court. As grounds for his appeal, the defendant claims that the trial judge erred in (1) denying the defendant's motions for required findings of not guilty; (2) prohibiting defense counsel from rehabilitating the defendant on a critical portion of his testimony; (3) allowing testimony of the defendant's prior misconduct; (4) denying the defendant's motions to sever the indictments; and (5) admitting evidence of fresh complaint. The defendant also argues that G. L. c. 272, § 3, is unconstitutionally vague. We affirm.

1a. *Required findings of not guilty.* At the close of the Commonwealth's case, and again at the close of the evidence, the defendant moved unsuccessfully for required findings of not guilty. The standard of review we apply to the denial of a defendant's motion for a required finding of not guilty is stated in *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979): "'[The] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' [emphasis in original]. *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979) . . . . Thus, to sustain the denial of a directed verdict, it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." See *Commonwealth* v. *Barry,* 397 Mass. 718, 719-720 (1986); *Commonwealth* v. *Anderson,* 396 Mass. 306, 311-312 (1985). We consider the state of the evidence both at the close of the Commonwealth's case and at the close of the evidence.[2]

We summarize the evidence as it may have appeared to the jury. The defendant, a fifty-one year old neurosurgeon, practiced medicine at the Framingham Union Hospital, where the complainant worked as a radiologic technologist. The defendant and the complainant dated from September, 1980, to Feb-

---

[2] We consider the evidence at the close of all the evidence to determine whether the Commonwealth's position as to proof deteriorated since it closed its case. *Commonwealth* v. *Pope,* 397 Mass. 275, 282 n.10 (1986). The Commonwealth's position as to proof did not deteriorate.

ruary, 1981. On August 15, 1983, the complainant injured her back. On September 6, 1983, she spoke with the defendant by telephone and made an appointment for September 9. On September 7, the defendant telephoned the complainant and suggested that he examine her at her apartment instead. On September 8, he arrived at her apartment at 1 P.M., and examined the complainant on her bed. He told her that she had a muscle spasm and recommended an injection of Valium to relax her muscles. He then administered an injection of five to ten milligrams of Valium.

The complainant testified that immediately after the injection she became virtually unconscious, did not feel the needle being removed, and felt "[v]ery groggy. Very out of it. Very heavy. . . . Like I couldn't move my arm or my legs." Sometime later, a ringing telephone awakened her. The defendant told her not to answer the telephone, but, after it had rung several times, she answered. The complainant recalled speaking with her friend, Lisa Block, but could not remember the conversation. She then noticed that the defendant was lying naked beside her, that her clothes had been removed, and that the defendant was "handling" her crotch. The complainant "blacked out again" and later reawoke to find the defendant on top of her, having intercourse with her. She did not remember saying anything to the defendant at this time. Her mind was "in a fog . . . like it wasn't real . . . . Like I was in like a Twilight Zone." She lost consciousness and reawoke to find the defendant having intercourse with her again. She asked him "why he was doing it, because wouldn't it hurt my back?" He replied that "the medicine would take care of it." Again she fell asleep and later reawoke; she saw the defendant dressing and heard water running in the bathroom. At the defendant's request, she got out of bed to let him out of the apartment. Her legs were "[l]ike rubber" and she felt like she had "about ten drinks." The defendant departed at about 2:45 P.M. and the complainant fell back asleep.

The complainant's mother and two of her friends testified that they spoke with the complainant by telephone between 3 and 3:30 P.M. They, along with Lisa Block (who had called

earlier), each said that the complainant's speech was slow, slurred, and groggy. She made no mention of rape. The complainant remembered receiving the telephone calls, but had no recollection of what was said. Later in the afternoon, when another friend telephoned, the complainant began to realize what had happened. The complainant reported her allegation of rape to a series of people throughout the rest of the day and the next morning.

Two physicians testified on the proper dosage of intravenous Valium and to the probable effects of injecting it into a twenty-six year old woman. Doctor Jonathan Moss told the jurors that intravenous Valium was used almost exclusively to sedate people prior to operations because it is "an amnesia drug . . . patients frequently don't remember even going to the operating room until their procedure is over." It renders them "more pliable" and lessens their protestations and resistance to uncomfortable procedures. Intravenous Valium sedates people physically, relieves their anxiety, and stops them from moving or trembling. Most patients receiving a five to ten milligram Valium injection would "become very tranquil and fall spontaneously off to sleep" and their decision-making capacity, thought processes, physical coordination and speech would be impaired for several hours. Doctor Robert Boyd stated that the accepted treatment for muscle spasms in the back is bed rest, with oral doses of pain relievers and muscle relaxants when necessary; intravenous injection of Valium would not be recommended because of the potential for "serious and devastating consequences."

The defendant claimed that he came to the complainant's apartment, examined her, and prescribed bed rest and an oral dose of Valium. In order to give her immediate relief from the spasm she was then experiencing, he injected her with five milligrams of Valium. He denied having intercourse with the complainant.

1b. We consider first the defendant's argument that he was entitled to a required finding of not guilty on the drugging charge because the complainant's testimony was not corrobo-

rated in a material particular. See G. L. c. 272, § 11.[3] Under
G. L. c. 272, § 3,[4] the elements of the crime of drugging for
sexual intercourse are (1) administration of a drug and (2)
intent to stupefy or overpower the victim in order to have
unlawful sexual intercourse. Besides the complainant's tes-
timony, the Commonwealth introduced testimony from an in-
vestigating police officer that he saw an injection mark on the
complainant's arm and from an expert toxicologist that, on the
night of the incident, his analysis of the complainant's blood
indicated a level of Valium consistent with an intravenous
injection of five to ten milligrams of Valium within the past
16 hours. Further, the defendant admitted to injecting the com-
plainant with Valium that day. This evidence amply corrobo-
rates a material particular of the plaintiff's testimony — that
the defendant administered a drug to her.

The defendant argues that because he did not contest that
he administered a drug to the complainant, that issue cannot
be considered a "material particular." We do not agree. While
we have not heretofore attempted to define "material particular"
as used in G. L. c. 272, § 11, the cases suggest that the term
applies to some specific testimonial fact, which, in the context
of the case, is probative on an element of the crime. See
*Commonwealth* v. *Williams,* 353 Mass. 233, 234-235 (1967)
(defendant's admission that he had been at complainant's apart-
ment not "material particular" on indictment for unlawful sex-
ual intercourse with feeble-minded female); *Commonwealth* v.
*Taschetta,* 252 Mass. 158, 160 (1925) (testimony by defense
witnesses that defendant took woman to house and then left
house with her a "material particular" on indictment for
fraudulently enticing and taking away woman for purpose
of unlawful sexual intercourse); *Commonwealth* v. *Bucaulis,*
6 Mass. App. Ct. 59, 64 (1978) (testimony of police officers
regarding their observations of man and woman in lounge

---

[3] General Laws c. 272, § 11 (1984 ed.), provides: "A person shall not
be convicted under sections two to six, inclusive, upon the evidence of one
witness only, unless his testimony is corroborated in a material particular
. . . ."

[4] See note 1, *supra.*

"material particular" in prosecution for knowingly having suffered presence of certain females for purpose of unlawful sexual intercourse in premises under defendant's control). Cf. *Commonwealth* v. *Forde,* 392 Mass. 453, 458 (1984) (undisputed fact of victim's death sufficient to corroborate defendant's confession to murder); *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 728-730 (1973) (interpreting G. L. c. 233, § 20I, providing no defendant shall be convicted solely on the testimony of an immunized witness). Because the defendant could not be convicted on the drugging charge without proof of the injection, facts probative on that point must be considered material particulars. In essence, the defendant would have us read the requirement of corroboration of a material particular as corroboration of a "disputed issue of material fact" as that phrase is used and understood in the consideration of summary judgment motions in civil practice. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See, e.g., *Federal Deposit Ins. Corp.* v. *Csongor,* 391 Mass. 737, 740-743 (1984); *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 556 (1976). However, G. L. c. 272, § 11, does not require that the material particular be disputed, and we decline to read such a requirement into the plain words of the statute.

1c. On the rape charge, the defendant claims, based on his reading of *Commonwealth* v. *Goldenberg,* 338 Mass. 377, 383, cert. denied, 359 U.S. 1001 (1959), that, where the complainant is possessed of her faculties, the amount of actual force required to sustain proof of rape must exceed that which is necessary to accomplish mere intercourse. Because there was no evidence that the complainant resisted, the defendant claims, the Commonwealth did not sustain its burden of proof.

"The essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by force and against the victim's will or compelled by threat of bodily injury. See G. L. c. 265, §§ 22 (a) & (b)." *Commonwealth* v. *Sherry,* 386 Mass. 682, 687 (1982). In *Commonwealth* v. *Burke,* 105 Mass. 376 (1870), this court held that in Massachusetts, as under the common law, "the words 'against [the victim's] will,' in the standard definitions

[of rape], mean exactly the same thing as 'without [the victim's] consent.'" *Id.* at 377. Because the victim there was "so drunk as to be utterly senseless and incapable of consenting," the court upheld the conviction based on proof only of "such force as was necessary to effect the purpose." *Id.* at 377. Accord *Commonwealth* v. *D'Ambrosio,* 318 Mass. 779 (1945); *Commonwealth* v. *Roosnell,* 143 Mass. 32, 40 (1886). Nothing in the subsequent amendments to the statutory definition of the crime of rape casts doubt on the continued vitality of *Burke.*

In *Commonwealth* v. *Goldenberg, supra,* on which the defendant relies exclusively, this court reversed a conviction of rape where the complainant's consent had been obtained by fraud. The court reasoned that the "essence of the crime is not the fact of intercourse but the injury and outrage to the feelings of the [victim] by the forceful penetration of her person. . . . Fraud cannot be allowed to supply the place of the force which the statute makes mandatory." *Id.* at 384.[5] In *Goldenberg,* the court specifically stated: "This is not a case where a woman is incapable of consent by reason of stupefaction, unconsciousness or helplessness, and the amount of force required to commit the crime may be only that sufficient to effect the intercourse. *Commonwealth* v. *Burke,* 105 Mass. 376." *Id.* at 383.

There was ample evidence from which a jury could have found beyond a reasonable doubt that the complainant was incapable of consent. She was injected with Valium and rendered unconscious. She awoke from her stupor only when jarred by noises such as a ringing telephone and by the motion of the defendant's body on top of her own. Her speech was barely coherent. There was also evidence that intravenous Valium is used in hospitals to lessen patients' capacity to resist or protest invasive procedures. The court's conclusion in *Burke* is particularly apt here: "[T]he crime, which the evidence in this case tended to prove, of a man's having carnal intercourse

---

[5] It may be questioned whether that reasoning is consistent with *Burke* and whether the injury and outrage to the personal integrity of the victim is any less when consent is fraudulently obtained. However, we need not decide whether *Goldenberg* is still good law, because it is inapposite to the facts of this case.

with a woman, without her consent, while she was, as he knew, wholly insensible so as to be incapable of consenting and with such force as was necessary to accomplish the purpose, was rape." *Id.* at 380-381.

2. *Exclusion of rehabilitation testimony.* On cross-examination, the defendant testified that he had taken back to the hospital the needle, syringe, and other items used to give the Valium injection. He conceded that, although he knew there was a wastebasket in the complainant's apartment, he had originally told the police that because he could not find a wastebasket there, he returned the items to the hospital. On redirect examination, the defendant explained that he had told the police he could not find a wastebasket "[b]ecause I did not want the police to know the reason I would not leave a syringe and needle in that apartment." When defense counsel asked the defendant to state his reason, the Commonwealth objected. Defense counsel made an offer of proof that the defendant would say "that he knew that [the complainant] used cocaine and that some of her friends used cocaine; that under those circumstances he wouldn't leave the needle." The judge sustained the objection and indicated she might prohibit the prosecutor from arguing the point to the jury. The prosecutor did not mention this point again either during trial or in his closing.

We agree with the defendant that he should have been permitted to explain the reason for his statement to the police. "It is well established that a witness may explain, modify, or correct damaging testimony that was elicited on cross-examination." *Commonwealth* v. *Mandeville,* 386 Mass. 393, 400 (1982), and cases cited. The defendant admitted on cross-examination that he had fabricated a reason for removing the needle and syringe from the complainant's apartment. He had a right to explain why he had lied to the police. *Commonwealth* v. *Kerrigan,* 345 Mass. 508, 513 (1963), cert. denied, 377 U.S. 1004 (1964). *Commonwealth* v. *Fatalo,* 345 Mass. 85, 87 (1962).[6]

---

[6] The Commonwealth argued to the judge, and repeats here, that the answer was unsubstantiated because there was no evidence that the com-

Nevertheless, we conclude that, in the circumstances of the case, the error was nonprejudicial. In cases in which similar errors have been held to require reversal, the attempted rehabilitation involved the defendant's credibility on a major, if not the decisive, issue in the case. In *Commonwealth* v. *Ferreira,* 373 Mass. 116, 130-131 (1977), the trial turned on a battle of credibility between the defendant and the Commonwealth's chief witness, one Silva, each of whom accused the other of shooting a police officer. On redirect examination, the defendant was prevented from explaining why, while in custody and after Silva denounced him, he refused to give a statement to police accusing Silva. In *Commonwealth* v. *Fatalo,* 345 Mass. 85 (1962), the defendant was not permitted to explain a crucial discrepancy in his alibi testimony. If the alibi had been believed, the defendant might have been acquitted. *Id.* at 88. In *Commonwealth* v. *Smith,* 329 Mass. 477, 478 (1952), a witness for the defense was prevented from explaining an apparent lie in his testimony; if believed, the testimony would have tended to confirm the defendant's alibi.

In this case, even if the jury were to have heard and believed the defendant's explanation of his reason for not telling the police why he had taken the needle and syringe, we can say with fair assurance that a reasonable jury would not have returned a different verdict. See *Commonwealth* v. *Reed,* 397 Mass. 440, 443 & n.4 (1986); *Kotteakos* v. *United States,* 328 U.S. 750, 763-765 (1946). The testimony related to a subject wholly collateral to the issues then being tried. *Commonwealth* v. *Mandeville, supra.* The defendant admitted to the police and at trial that he had injected the complainant with Valium. Given this admission, the jury had no reason to infer that the defendant attempted to conceal the syringe from the police because of a guilty frame of mind concerning the injection. No further mention of the testimony was made during the re-

plainant had ever injected cocaine. That argument was and is irrelevant because the defendant's offer of proof made no mention of injecting cocaine. Further, the offered answer was not unsubstantiated, because the complainant already had testified that she and a friend had ingested a small amount of cocaine the evening following the incident.

mainder of the fifteen-day trial or in the prosecutor's closing. The defendant's explanation for removing the needle and syringe from the apartment does not in any way contradict or detract from the substantial evidence of his guilt. We therefore conclude that any prejudice to the defendant arising from this error did not possibly weaken his case in any significant way. See *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983).

3. *Evidence of prior misconduct.* Over the defendant's objection, two other women, L.J. and K.H., testified that, when they were patients of the defendant, he came to their apartments, injected them with Valium and then sexually molested them while they were under the influence of the drug. The defendant claims the admission of this evidence was erroneous because its questionable probative value on the drugging charge was outweighed by its prejudicial impact and because the evidence was clearly not relevant to the charge of rape, yet no limiting instruction could confine the jury's consideration of the prior misconduct exclusively to the drugging charge.

It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose. *Commonwealth* v. *Drew,* 397 Mass. 65, 79 (1986). *Commonwealth* v. *Trapp,* 396 Mass. 202, 206 (1985). *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1981). *Commonwealth* v. *Stone,* 321 Mass. 471, 473 (1947). Such evidence can be highly prejudicial to the defendant, and therefore must be excluded unless it comes within one of the permitted uses, such as to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive. *Commonwealth* v. *Schoening,* 379 Mass. 234, 242 (1979), and cases cited. Accord *Commonwealth* v. *Lowe,* 391 Mass. 97, 106, cert. denied, 469 U.S. 840 (1984) (victim's state of mind); *Commonwealth* v. *Weichell,* 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984) (motive); *Commonwealth* v. *King,* 387 Mass. 464, 472 (1982) (common course or pattern of conduct); *Commonwealth* v. *Gallison,* 383 Mass. 659, 672-673 (1981)

(same); *Commonwealth* v. *Young,* 382 Mass. 448, 463 (1981) ("entire relationship" between defendant and victim); *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979) (knowledge); *Commonwealth* v. *Campbell,* 371 Mass. 40, 42-43 (1976) (distinctive modus operandi); *Commonwealth* v. *Fleury-Ehrhart,* 20 Mass. App. Ct. 429, 431 (1985) (pattern of conduct). Of course, as with all evidence, it must be relevant to the offense charged; where the relevance is not substantial but borderline, the evidence must be excluded unless its probative value on the issue in contention outweighs the undue prejudice that may flow from it. See *Commonwealth* v. *Blow,* 362 Mass. 196, 201 (1972).

The judge in this case, commendably sensitive to the potential for undue prejudice from the introduction of irrelevant evidence, conducted a voir dire and strictly limited the scope of the two witnesses' testimony to the defendant's sexual misconduct associated with injections of Valium in patients' homes.[7] L.J. testified that in November, 1980, when she was twenty-two, she consulted the defendant twice in his office for treatment of migraine headaches. In January, 1981, the defendant proposed that he come to her home to administer a ten milligram injection of Valium. When he arrived, he persuaded L.J., despite her misgivings, to change into a nightgown, and then gave her the injection. While she was under the influence of the Valium and "fading in and out," the defendant had intercourse with her. K.H. testified that she injured her back in June, 1981, and spent one week in the Framingham Union Hospital under the defendant's care. After her discharge, K.H. suffered a muscle spasm on July 1, 1981. Her roommate gave her a Valium tablet at about 7 P.M. and telephoned the defendant. K.H. fell asleep in her bed and awakened when the defendant arrived at 11 P.M. Although she told the defendant that she was no longer in pain, he insisted on examining her and giving her a ten milligram Valium injection. Almost immediately she

---

[7] On voir dire, L.J. testified that she may have been sexually assaulted following a Valium injection given in the defendant's office; K.H. testified that the defendant may have molested her roommate. Neither witness was permitted to testify to these incidents before the jury.

began to feel "heavy" and "immobilized," was "unable to get up or move" and "could still speak, but [she] distinctly remember[ed] having a delayed reaction; that is, thinking the thoughts but not having them come out at the normal rate." The defendant then pulled down her nightgown and started fondling her breasts. When he expressed feelings of guilt about desiring a sexual relationship with her, she replied, "If you feel guilty, you should stop."

The judge instructed the jury that both witnesses' testimony could be considered only on the drugging indictment, not on the rape, and only for the limited purpose of whether it "tends to prove the existence of a plan or scheme or state of mind on the part on the defendant."[8] The judge also charged the jury that they were not to use the two witnesses' testimony at all unless they believed it beyond a reasonable doubt.[9] The instructions were strong and forceful.

Although the question is close, we conclude there was no error. On the drugging indictment, the Commonwealth was obliged to prove as an element of the crime that the defendant administered the drug "with intent to stupefy or overpower [the complainant] so as thereby to enable any person to have unlawful sexual intercourse with [the complainant]." G. L. c. 272, § 3 (1984 ed.). The defendant claimed that he gave the injection for therapeutic reasons, not with criminal intent. The Commonwealth offered expert testimony that the defendant's conduct was inconsistent with good medical practice.[10]

---

[8] The defendant did not object at trial and does not on appeal challenge the propriety of the judge's limiting instructions.

[9] Because this instruction benefited the defendant, we need not decide whether it was unduly stringent. See *Commonwealth* v. *Polian*, 288 Mass. 494, 498 (1934) ("Every necessary element of the crime must be proved beyond reasonable doubt, but it does not follow that every piece of evidence must be admissible beyond reasonable doubt").

[10] Doctor Boyd, an orthopedic surgeon and Director of the Back Problems Clinic at the Massachusetts General Hospital, testified for the Commonwealth that injection of Valium was not "an appropriate or usual and customary treatment for back pain." Doctor Moss, a board-certified anesthesiologist and pharmacologist at the Massachusetts Eye and Ear Infirmary, testified that the intravenous injection of Valium presented many risks, including

In these circumstances the defendant's conduct with L.J. and K.H. which was remarkably similar to the complainant's complaint was highly probative. The defendant came to the homes of young women with whom he had a doctor-patient relationship, injected them with Valium, and then sexually molested them while they were physically and mentally unable to express resistance. See *Commonwealth* v. *King,* 387 Mass. 464, 469-473 (1982). The evidence showed a distinctive pattern of conduct — nonhospital administration of intravenous Valium — contrary to accepted medical practice and associated with sexual molestation of the patients.[11] The challenged evidence was relevant and material to the disputed issue of the defendant's intent in administering the drug. It tended to show the defendant's state of mind when administering the drug, to rebut the defense of innocent, therapeutic intent and to make more probable the existence of the requisite illegal intent.[12] *Commonwealth* v. *Fleury-Ehrhart,* 20 Mass. App. Ct. 429, 431 (1985). *People* v. *Thompson,* 27 Cal.3d 303, 319 (1980) ("if a person acts similarly in similar situations, he probably harbors the same intent in each instance"). *People* v. *Thomas,* 20 Cal.3d 457, 465 (1978) ("evidence of a common design or plan would bear either on the issue of the defendant's *identity* as the perpetrator of the charged offense, or the defendant's *intent* to commit that offense" [emphasis in original]). See also *People*

the inability to maintain breathing functions, and that therefore "virtually every textbook of anesthesia recommends that it be given only in [a hospital under] monitored circumstances where you have the ability to resuscitate patients." In light of this testimony, the jury could have found the defendant's administration of Valium injections in patients' homes on at least three, nonemergency occasions was not consistent with good medical practice.

[11] Although proof of sexual relations is not a required element of proof on the drugging charge, evidence of sexual relations subsequent to administration of the drug is highly probative on the drugging charge to show circumstantially that the defendant bore the requisite intent when he administered the injection.

[12] This case presents the first instance in which this court has directly considered whether instances of prior misconduct, not connected with the charged offense as part of an ongoing criminal enterprise or plan, may be used to show the defendant's intent. We therefore look to other courts and to commentators.

v. *Tassell,* 36 Cal.3d 77, 88-89 & nn. 6 & 8 (1984); *State* v. *Hatcher,* 372 So.2d 1024, 1028-1029, 1034-1035 (La. 1979); *People* v. *Davis,* 343 Mich. 348, 363-364 (1955); *State* v. *Lapage,* 57 N.H. 245, 294 (1876); *Rex* v. *Smith,* 11 Crim. App. 229 (1915). See generally E.J. Imwinkelried, Uncharged Misconduct Evidence § 5 (1984); 2 J. Wigmore, Evidence § 302 (Chadbourne rev. 1979). Although the incidents occurred some three years apart, we do not believe the interval too great, given the distinctiveness and near-identicality of the conduct and its context within the defendant's professional career.[13]

This testimony was admitted only with respect to the drugging charge. Before each witness testified, and in the charge, the judge forcefully instructed the jury — at the defendant's request — not to consider the testimony with respect to the rape charge. The defendant now contends that, even if the evidence was admissible on the drugging charge, it was so prejudicial that no limiting instruction could be expected to confine the jury's use of the evidence.

"Jurors are expected to follow instructions to disregard matters withdrawn from their consideration." *Commonwealth* v. *Cameron,* 385 Mass. 660, 668 (1982). The judge's instructions were clear, and we must presume the jury followed them.

---

[13] There is no bright-line test for determining temporal remoteness of evidence of prior misconduct. Where the prior misconduct is merely one instance in a continuing course of related events, the allowable time period is greater. See, e.g., *Commonwealth* v. *Drew,* 397 Mass. 65, 79 (1986) (evidence of murder committed four months previously admitted to show motive for murdering eyewitness); *Commonwealth* v. *Schoening,* 379 Mass. 234, 242 (1979) (evidence of other corrupt acts committed over three-year period in course of continuing conspiracy to bribe public official and steal from Commonwealth admissible). Cf. *Commonwealth v. Nassar,* 351 Mass. 37, 44-45 (1966) (evidence of defendant's arrest for murder sixteen years previously inadmissible). Where the logical relationship between the charged and uncharged offenses is more attenuated, a time span of fifteen minutes may be too much. See, e.g., *Commonwealth* v. *Yelle,* 19 Mass. App. Ct. 465, 470 (1985) (evidence that defendant to rape charge had offered a ride to young girl fifteen minutes before picking up complainant not admissible). Where the evidence is otherwise relevant, the jury may consider the time interval between such incidents as bearing on the weight to be given such evidence. The judge so instructed the jury.

*Commonwealth* v. *Errington,* 390 Mass. 875, 882 (1984). *Commonwealth* v. *Jackson,* 384 Mass. 572, 579 (1981). Although a trial judge may of course exclude evidence admissible on one indictment because of the potential for undue prejudice on a jointly-tried indictment, the judge here did not abuse her discretion or err as a matter of law by admitting the testimony.[14] Based on her on-the-scene assessment of the trial and of the witnesses' testimony on voir dire, she properly could conclude that the potential for undue prejudice would be minimized by strictly limiting the scope of testimony and by instructing the jury.[15]

4. *Denial of the motion to sever.* At trial, the defendant moved unsuccessfully to sever the indictments on the grounds that the indictments required disparate elements of proof and that the admission of the prior bad acts testimony on the drugging charge would have a prejudicial spillover effect on the indictment charging rape. Later, the defendant again moved to sever, this time on the ground that he would be unreasonably prejudiced on the rape indictment because conviction on the drugging indictment required the jury to find that the complainant's testimony be corroborated in a material particular.[16]

---

[14] The dissent, *infra,* suggests that the prior bad acts testimony was so prejudicial that the jury could not be expected to disregard it on the rape charge. The dissent gives no credit to the intelligence of the jurors or to the clarity and forcefulness of the judge's thrice-repeated instructions. As we read the record, the judge's careful and conservative approach to the evidence minimized the likelihood that the jurors would be so emotionally swayed by the evidence that they would disregard her instructions. In these circumstances, we may rely on the fair-mindedness of the jurors. See 225-226, *supra,* & nn. 7 & 9.

[15] While we need not decide if the evidence also was admissible on the rape charge, we do note that the evidence suggests a common pattern of conduct according to which the plaintiff would visit young women patients in their homes, inject them with Valium — a drug that would render them immobile, passive, and unable later to relate clearly and precisely what had happened to them — and then molest and rape them. The two witnesses' testimony also may have been admissible to rebut the defendant's claim that the complainant merely had imagined that intercourse had taken place.

[16] Under Mass. R. Crim. P. 9(d)(2), 378 Mass. 860 (1979), a defendant's motion to sever must be made before trial, "except that a motion for severance may be made before or at the close of all the evidence if based upon

The decision whether to sever indictments lies within the sound discretion of the trial judge. *Commonwealth* v. *Sylvester,* 388 Mass. 749, 754 (1983). *Commonwealth* v. *Gallison,* 383 Mass. 659, 671 (1981). *Commonwealth* v. *Jervis,* 368 Mass. 638, 645 (1975), and cases cited. Joinder is permitted if the offenses constitute a single line of conduct, grow out of essentially one transaction, and would be proved by substantially the same evidence. See *Commonwealth* v. *Blow,* 362 Mass. 196, 200 (1972). Where those criteria are not satisfied and the defendant may be prejudiced by the cumulative evidence of the several offenses, severance is required. *Id.* at 201. The defendant bears the burden to show that prejudice will result from the failure to sever and that such prejudice is beyond the curative powers of the court's instructions. *Commonwealth* v. *Gallison, supra.*

The defendant has failed to sustain that burden. The two offenses could be proved by "evidence connected with a single line of conduct, and grow out of what is essentially one transaction." *Commonwealth* v. *Maloney,* 348 Mass. 610, 614 (1965). The drugging indictment would be incomprehensible without evidence of subsequent sexual intercourse; the complainant's testimony concerning the rape would have been incredible without evidence that she had been drugged. Most of the evidence was admissible on both indictments and the judge gave limiting instructions on the remainder. At the defendant's request, the judge limited the use of fresh complaint evidence

---

a ground not previously known." Before trial, the judge allowed the defendant's motion in limine to exclude the evidence of the defendant's prior bad acts, but without prejudice to the Commonwealth should the evidence appear to be more probative in light of the issues that developed during the trial. When the judge later made that determination, reversed her ruling, and allowed introduction of the prior misconduct evidence on the drugging charge, the defendant then had new grounds for requesting severance. The motion based on those grounds was therefore timely. Conversely, the defendant's claims that the indictments required disparate elements of proof and that the material particular requirement on the drugging indictment might cause prejudice on the rape indictment could have been made before trial. To the extent the motions were based on those grounds, they were not timely filed and are not properly before us. Even if they were, we see no merit in them.

to the rape charge, and the defendant does not now contend that that evidence was so prejudicial as to be beyond the power of curative instructions. Also at the defendant's request, the judge limited evidence of prior misconduct to the drugging charge and gave clear, forceful, and extensive instructions.

We add that severance would have resulted in a second proceeding, largely duplicative of the first. See *Commonwealth* v. *Hoppin,* 387 Mass. 25, 33 (1982); *Commonwealth* v. *Gallison, supra* at 673. In such circumstances, the judge properly could conclude that prejudice, if any, to the defendant did not outweigh the interests of the court, the Commonwealth, and the public in a shortened adjudication. See *Commonwealth* v. *Sylvester, supra* at 758, and authorities cited. We conclude that there was no error in denying the defendant's motions to sever.

5. *Evidence of fresh complaints.* The defendant contends that the judge erred in admitting testimony that the victim made a "fresh complaint" of the rape to several people. The defendant concedes fresh complaint of a recent rape normally is admissible, see *Commonwealth* v. *Bailey,* 370 Mass. 388 (1976), but argues that the evidence in this case was stale.

The evidence was as follows. The defendant arrived at the complainant's apartment at about 1 P.M. and, after examining her, administered the Valium injection. The complainant received one telephone call before the defendant left at 2:45 P.M. and three more calls between then and 3:30 P.M. All four callers testified to the effect that the complainant was groggy and her speech slurred and unclear, but that she made no mention of rape. Sometime between 3:30 and 4:45 (the testimony was divergent), as the complainant became more awake, she received another phone call from a friend. She described the injection, falling asleep, and awakening with the realization that she was naked and that the defendant was having intercourse with her. Her friend asked, "Don't you realize that you have been raped?" The complainant then started crying and became hysterical. Over the next ten to twelve hours, there followed a series of telephone and in-person conversations with other friends, an attorney, and a police officer, in which the complainant repeated her narrative of the incident.

Before introduction of the fresh complaint evidence, the defendant moved to exclude all conversations in which the complainant reported that she had been raped. The defendant argued, and renews the argument here, that because the complainant failed to tell earlier callers she had been raped, her later complaints were unreasonably delayed. The judge made the preliminary finding that the statements were sufficiently prompt to constitute fresh complaints, see *Commonwealth* v. *Cleary,* 172 Mass. 175, 177 (1898). The judge instructed the jury to use fresh complaint testimony only in corroboration of the rape charge. She instructed the jurors to consider the timing and circumstances of the complaints in assessing the weight of this evidence.

There was no error. There was ample evidence that, when the complainant received the first four phone calls, she was under the influence of a Valium injection, barely conscious, and severely handicapped in her ability to express herself. The fact that the complainant retained some minimal capacity to speak when a ringing telephone awakened her from a drug-induced stupor does not render her subsequent statements unreasonably remote. See *Commonwealth* v. *Sherry,* 386 Mass. 682, 691 (1982); *Commonwealth* v. *McGrath,* 364 Mass. 243, 249-250 (1973); *Commonwealth* v. *Izzo,* 359 Mass. 39, 42-43 (1971). We conclude that there is no error in the admission of this evidence.

6. *Constitutionality of G. L. c. 272, § 3.* The defendant challenges his indictment on the drugging charge on the ground that G. L. c. 272, § 3, is unconstitutionally vague. The defendant's argument is not timely. The defendant did not raise this objection before or even during trial. We need not consider issues not raised below.[17] *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 308 (1984).

*Judgments affirmed.*

---

[17] Even if the issue were properly before us, there is no merit to the contention that the statute is vague as applied to the facts of this case. See *Commonwealth* v. *Gallant,* 373 Mass. 577, 581 (1977), quoting *United States* v. *Powell,* 423 U.S. 87, 92 (1975).

O'CONNOR, J. (dissenting). I do not agree that the erroneous exclusion of the defendant's proffered rehabilitation testimony was nonprejudicial, nor do I agree that the evidence of the defendant's prior misconduct was admissible. I would reverse the judgments and remand the case for a new trial of both indictments.

The defendant offered to explain to the jury that the reason he had lied to the police was not self-interest but rather his desire to protect the complainant and her friends from being discovered to be cocaine users. The court recognizes that the defendant "had a right to explain why he lied to the police" (*ante* at 222), but concludes "with fair assurance" that the exclusion of that evidence was harmless because, even if the jury had believed the defendant's explanation, they would have found him guilty on the drugging and rape charges anyway (*ante* at 223). The court's assurance is unjustified.

The defendant's only realistic hope of acquittal depended on the jury's not being satisfied beyond a reasonable doubt that he had had intercourse with the complainant. Unless he had intercourse, it is unlikely that he administered the drugs to enable him to do so. See note 11, *supra*. The complainant testified that the defendant had had intercourse with her. The defendant testified that he had not. The defendant's credibility, therefore, was critical to the outcome of the case. The fact, brought out on cross-examination of the defendant, that he had lied to the police investigators, suggested with considerable force that (1) when he spoke to the police, the defendant was conscious of his guilt; human experience teaches that the guilty tend to lie to investigators about both important and unimportant details of the incident under investigation, and (2) the defendant was not a reliable witness because he was not averse to lying "to save his own skin." Surely, it cannot rightly be said that the portrayal of the defendant as a deceitful man, conscious of his guilt, did not prejudice him. That portrayal, effectively accomplished on cross-examination, cried out for the defendant's rehabilitation. See *Commonwealth* v. *Errington,* 390 Mass. 875, 879-881 (1984). The defendant's legitimate attempt at rehabilitation was thwarted however. He was not permitted

to explain to the jury that he had lied, not to protect himself, and not because he had a guilty frame of mind, but to protect others.

In order to find the defendant guilty as charged, the jury had to believe the complainant's testimony and disbelieve that of the defendant. No one can say with fair assurance that, in choosing whom to believe, the jury was not influenced by the defendant's cross-examination unmet by any explanation, or that, had they heard the explanation, they would not have arrived at a different verdict. The error cannot properly be considered harmless. Therefore, a new trial on both charges is required.

A new trial on both charges is also required because evidence of the defendant's earlier conduct with L.J. and K.H. was erroneously admitted on the drugging charge over the defendant's objection. That error prejudiced the defendant with respect to both indictments. As the court observes (*ante* at 224), "[i]t is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose." The rationale for this rule is that while such evidence may be marginally probative, "there is the danger that, because a defendant appears to be a bad man capable of, and likely to commit, such a crime as that charged, a jury might be led to dispense with proof beyond a reasonable doubt that he did·actually commit the crime charged. Moreover, it is not fair that a defendant in the course of a trial should be called upon to defend himself against accusations not set forth in the indictment." *Commonwealth v. Stone,* 321 Mass. 471, 473 (1947). See McCormick, Evidence § 188 (2d ed. 1972). If this well-settled rule of fairness is to continue to have any vitality whatsoever, the other bad acts evidence in this case must be held inadmissible. The only function of the evidence was to show that the defendant had a general propensity to drug women in order to enable him to have intercourse with them, and that therefore he drugged the complainant for that purpose as charged. That is precisely what the rule prohibits.

The court reasons (*ante* at 227) that the evidence of the defendant's prior conduct with L.J. and K.H. was "highly probative" in that it showed a distinctive pattern of conduct bearing on the defendant's state of mind when administering the drug, thus tending to rebut the defense of innocent, therapeutic intent and making more probable the existence of the requisite illegal intent. In support of that contention, the court cites *Commonwealth* v. *Fleury-Ehrhart,* 20 Mass. App. Ct. 429, 431 (1985), and cases from other jurisdictions. In all the cited cases, the admission of other crime evidence was affirmed on appeal, not on the ground that the evidence demonstrated a distinctive pattern of conduct (modus operandi), but on the quite different ground that it demonstrated the defendant's involvement in a common scheme, design, or plan. See *Commonwealth* v. *Gallison,* 383 Mass. 659, 673 (1981); *Commonwealth* v. *Schoening,* 379 Mass. 234, 242 (1979). Therefore it is difficult to know whether the court approves the admission of the "other crime" evidence in this case because it demonstrates a distinctive modus operandi or a common scheme. In any event, neither theory justifies the admission of the contested evidence.

When a crime has been committed in a unique way, and the person charged with committing the crime has been shown to have had an opportunity to commit it, evidence that the defendant previously committed the same crime in the same unique way has a strong tendency to show that he, and not someone else, committed the crime with which he is charged. The evidence is admissible, therefore, to establish the identity of the assailant. *Commonwealth* v. *Lacy,* 371 Mass. 363, 366 (1976). Modus operandi evidence is designed to identify the perpetrator of a crime proven by other evidence. In this case, the question is whether a crime was committed, not who committed it, and therefore the distinctive modus operandi theory does not apply. The court cites no case from Massachusetts or elsewhere holding in a criminal case that evidence of the unusual manner in which a defendant has executed a crime or crimes in the past is admissible to prove that on a particular occasion he possessed criminal intent.

Neither does the "common scheme" theory apply. This court said in *Commonwealth* v. *Stone, supra* at 473-474, that "[i]n trials of indictments for larceny by obtaining money or property by false pretenses it has been held, as bearing on the defendant's intent, that his criminal conduct on another occasion is admissible, provided it is reasonably near in time and so connected with the crime charged in the indictment as to show unity of plot and design and that it was part of a common plan or scheme to defraud." In that case, and in *Commonwealth* v. *Schoening, supra* at 242-243, which involved indictments for conspiracy to bribe a public official and conspiracy to steal from the Commonwealth, evidence of other bad acts was held admissible to prove the defendant's state of mind when those other acts were part and parcel of one ongoing course of conduct. However, the act in question here, together with the two prior acts involving L.J. and K.H. more than two years earlier, cannot be considered phases of one continuous operation if we are to retain the salutary rule requiring the exclusion of evidence of other bad acts to show a defendant's criminal propensities.

I recognize that in *Commonwealth* v. *King,* 387 Mass. 464, 469-472 (1982), this court held that at the trial of an indictment for unlawful, unnatural sexual intercourse with a child under sixteen years of age, the judge properly admitted evidence that during the period of the alleged misconduct the defendant also engaged in sexual acts with the victim's younger brother. For the first time, this court in *King* applied the common scheme theory in an action charging a sexual offense. Also for the first time, this court in *King* applied the common scheme theory, not just to prove the defendant's state of mind, but to prove that he committed the act with which he was charged. *Id.* at 478 (O'Connor, J., dissenting). I continue to believe that *King* was wrongly decided. It is not necessary, however, that I urge the overruling of *King* in support of my contention that the evidence of other bad acts in this case should be held inadmissible. The King case and this one are readily distinguishable.

In *King,* the court concluded that the acts alleged in the indictment and the other acts "formed a 'temporal and schematic nexus'" because they were committed against a sister and a brother who made their home with the defendant, and the offenses not included in the indictment occurred within the same time period as the offenses with which the defendant was charged. *Id.* at 472. In the present case, however, the other two acts were with unrelated people, and they occurred six months apart and more than two years earlier than the charged offense.

In *King,* the court did not purport to overrule *Commonwealth* v. *Welcome,* 348 Mass. 68 (1964). In fact, in *Commonwealth* v. *Sylvester,* 388 Mass. 749, 757 (1983), the court expressly stated that "*Commonwealth* v. *King, supra,* and *Commonwealth* v. *Gallison,* [383 Mass. 659 (1981)], do not overrule *Commonwealth* v. *Welcome, supra.*" No principled distinction can be made between this case and *Commonwealth* v. *Welcome.* In that case, we held inadmissible in a trial for indecent assault and battery on a child under fourteen evidence that the defendant had assaulted other young girls. *Id.* at 70-71. We "invoke[d] the rule that evidence of a distinct crime unconnected with that for which the defendant is indicted cannot be received." *Id.* See also *Commonwealth* v. *Ellis,* 321 Mass. 669, 670 (1947) (holding that it was error to admit in a statutory rape trial evidence that the defendant molested an older sister). The court makes no effort to distinguish the present case from *Commonwealth* v. *Welcome, supra,* or *Commonwealth* v. *Ellis, supra.* Rather, the court ignores those cases and turns to foreign jurisdictions for guidance. *Commonwealth* v. *Welcome, supra,* articulates good law, and has recently been characterized by the court as stating the current law. That case, and the sound principle of fairness that it enunciates, should not be overruled without discussion adequate to justify such action.

The evidence of the defendant's earlier conduct with L.J. and K.H. was probative, though not, as the court says, "highly probative" on the question whether the defendant injected Valium into the complainant to enable him to have intercourse with her or for therapeutic reasons. To infer criminal intent,

however, the fact finder must first infer from the defendant's prior conduct that he had a propensity to commit that crime, and then to say that a man with that propensity probably had the intent required for the crime charged. Thus, the evidence of prior bad acts was introduced for the purpose of showing his propensity to commit the crime. But "[i]t is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." The court purports to acknowledge this. See *ante* at 224.

This court's decision in *Commonwealth v. King, supra,* and now in this case, displays a sharp retrogression in its sensitivity to the unfairness of admitting in a criminal case evidence of a defendant's prior bad acts that was earlier expressed so well in *Commonwealth v. Stone, supra, Commonwealth v. Ellis, supra,* and *Commonwealth v. Welcome, supra.* It is difficult, nay impossible, to reconcile that unenlightened trend with the court's recent progressive recognition of the danger of unfair prejudice inherent in admitting evidence of a defendant's conviction under G. L. c. 233, § 21, to impeach his credibility as a witness. See *Commonwealth v. Elliot,* 393 Mass. 824, 832-834 (1985); *Commonwealth v. Maguire,* 392 Mass. 466, 470 (1984); *Commonwealth v. Chase,* 372 Mass. 736, 750 (1977). In those cases, we recognized that the greater the similarity between the charged offense and past offenses, the greater the potential for unfairness — even if, unlike here, the jury is instructed that they are to consider the evidence of past bad acts solely on the issue of the defendant's credibility as a witness. The court is moving in two diametrically opposite directions simultaneously. The direction taken by the court in this case is the wrong one.

The judge instructed the jury that they should consider the contested evidence only with respect to the drugging charge. Clearly, the evidence, erroneously admitted, was prejudicial to the defendant with respect to that indictment. It was equally prejudicial as to the rape indictment despite the judge's limiting instruction. *Commonwealth v. DiMarzo,* 364 Mass. 669, 681-

682 (1974) (Hennessey, J., concurring) ("It is reasonable for us to be confident that in most cases limiting instructions accomplish their intended purpose. Nevertheless, in cases . . . where the evidence subject to limitations has an extremely high potential for unfair prejudice, we have a duty to be skeptical as to the effectiveness of limiting instructions. . . . The reasoning of the [*Bruton* v. *United States,* 391 U.S. 123 (1968)] case is highly relevant . . . since that case recognized the futility, even the absurdity, of expecting a jury in some circumstances to conform to limiting instructions").

Both convictions are flawed by prejudicial error, both in the exclusion of rehabilitative evidence to which the defendant was entitled, and the admission of evidence of the defendant's prior misconduct. The judgments should be reversed and the case should be remanded to the Superior Court for retrial.