COMMONWEALTH vs. WILLIAM F. ENGLEHART. No. 88-P-902. September 25, 1989. *Evidence,* Relevancy and materiality, Photograph, Other offense, Judicial discretion. *Identification.*

The defendant's appeal from his conviction of armed robbery concerns a borderline application of the familiar principle that admission of evidence of prior bad acts depends on weighing in the balance relevance for a proper purpose against the prejudicial effect to the defendant. See *Commonwealth* v. *Blow,* 362 Mass. 196, 201 (1972); *Commonwealth* v. *Gallison,* 383 Mass. 659, 671 (1981); *Commonwealth* v. *Helfant,* 398 Mass. 214, 224-225 (1986); *Commonwealth* v. *Anolik, ante* 701, 707 (1989). The prosecution was for a bank robbery that took place in Brockton on January 30, 1981, at 6:25 P.M. The bank teller, who had the best opportunity to observe the robber's face, stuffed a bag with money that included an explosive charge of red dye. Hurrying out, the robber bumped into a customer in the lobby, who focused on the robber briefly as they were moving from the bank to the relative darkness of the parking lot. He saw the robber throw the smoking money bag from his stolen van and speed away. The responding officers first secured the van, abandoned a short distance away, then took statements from the teller and the customer. After hearing their descriptions, the officers secured a picture of the defendant from the North Easton police. They showed it to the teller, who identified the defendant as the robber; but her in- and out-of-court identifications were suppressed (on a pretrial motion) for improper suggestiveness.[1] The customer identified the picture from a photo array. At trial the Commonwealth was able to offer two items of inculpatory evidence: the customer's identification, and five blurry pictures taken by a bank surveillance camera during the robbery. The pictures (which are before us) show the somewhat distinctively triangular shape of the robber's head, a prominent nose, and a face either clean-shaven or with a

---

[1] The motion judge failed to consider or apply the reliability test of *Manson* v. *Brathwaite,* 432 U.S. 98 (1977). See *Commonwealth* v. *Gordon,* 6 Mass. App. Ct. 230, 234-240 (1978); *Commonwealth* v. *Hicks,* 17 Mass. App. Ct. 574, 576-578 (1984); Smith, Criminal Practice and Procedure §§ 453-456 (2d ed. 1983). The Commonwealth did not appeal from the order allowing the motion.

slight mustache; beyond those, the features could be thought too indistinct for confident identification. The police recovered no physical evidence, such as fingerprints, from the abandoned van. Thus, much turned on the customer's identification, which was based on a fleeting encounter.

The defendant did not testify but did produce two alibi witnesses from Chicago. The first, named Spoto, testified that he had met the defendant in Chicago in early November, 1980, had used him for occasional odd jobs at his home that month and in December, and had employed him in his burglar-alarm security business during a particularly busy period in the last week of January, 1981. He produced telephone slips reflecting the defendant's work activity on several days, including January 30, the day of the Brockton bank robbery. Spoto's financial records did not mention the defendant's name; Spoto said he treated the defendant and another man as "contractors," not employees, and the defendant interjected (improperly) that he was paid in cash. The other Chicago witness was a landlady, who testified that she had rented a room to the defendant for January and February, 1981, and she remembered hearing activity in the room in the relevant, late-January period.

The problem arose in the Commonwealth's rebuttal. The prosecutor sought to introduce three photographs taken on December 18, 1980, by a bank surveillance camera at the North Easton Savings Bank. In contrast to the five photographs taken at the Brockton bank, these were relatively clear, displaying a face with sufficiently distinctive features that the jury could probably reach a confident conclusion, based thereon, that the person depicted either was or was not the defendant on trial before them (and, if the former, that the defendant was in Massachusetts on December 18, 1980). The relevance of this testimony, the prosecutor argued, was to contradict the implication of Spoto's testimony, that the defendant was living in Chicago in the period November, 1980, through at least February, 1981. The defendant protested that Spoto only claimed to have seen the defendant ' on several isolated occasions in November and December, that his testimony was focused on the defendant's presence in Chicago the last week of January, and that the presence of the defendant in North Easton on December 18 did not contradict that testimony. The judge reasoned, however, that the implication of Spoto's testimony covered the broader period and that the jury could think it unlikely that a person doing occasional odd jobs for low pay would be a frequent traveler between the Chicago and Boston areas. Thus, the evidence, he felt, had some tendency to cast doubt on the whole Chicago alibi.

The defendant's counsel was primarily concerned with the potential prejudicial effect of the North Easton bank photographs, showing a man the jury could recognize as the defendant in a posture identical to that of the robber in the Brockton bank photographs. He feared that the jury would suspect that the North Easton photographs also depicted a bank robbery (as, from the in-chambers discussions between the judge and counsel, it

seems they did), for how else would the police produce bank photos from a wholly unconnected date six weeks removed from the Brockton robbery? He offered to stipulate to the defendant's presence in the Commonwealth at various times in November and December. The Commonwealth was reluctant to stipulate, as was its right (see *Commonwealth* v. *Nassar*, 351 Mass. 37, 46 [1966]), and the judge decided to admit the North Easton photos in evidence. He gave the jury a lengthy cautionary instruction to the effect that the photographs were only offered to show presence, that they must appreciate that the judge and the members of the jury had doubtless had their pictures taken many times by bank surveillance cameras, that the person in the photographs may only have been cashing a check, that they should draw no inference that he was doing anything wrong, and so forth. The defendant felt the instructions only made matters worse and moved for a mistrial, which was denied.

We agree with the defendant that the potential for prejudice in this scenario was considerable; we also agree, however, with the judge's assessment that the evidence had more than trivial relevance. In this situation many judges might have exercised their judgment to exclude the North Easton photographs, particularly in light of the defendant's willingness to stipulate to his presence. Still, the trial judge's discretion in weighing the balance is broad, *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 3 (1972), and the cases are few where the trial judge's exercise of discretion has been reversed. The single such case relied on by the defendant involved factors more egregious than the present case. The mother's testimony in *Commonwealth* v. *Yelle*, 19 Mass. App. Ct. 465, 468-471 (1985), was manifestly without relevance except to impugn the defendant's character. Contrast also *Commonwealth* v. *Blow*, 362 Mass. at 200-201, where the defendant's convictions were reversed for failure to sever indictments for activities unrelated except that they occurred the same day. The judge's cautionary instructions here were strong and forceful, and we must presume the jury followed them. *Commonwealth* v. *Helfant*, 398 Mass. at 228. *Commonwealth* v. *Anolik*, *supra* at 708.

There is no merit to the defendant's argument that the identification by the customer should have been suppressed due to suggestiveness of the photo array. The point is raised for the first time in this court; in the trial court the defendant's suppression motion was based on a contention that the photographs were recognizably mugshots, a point not argued on appeal. The customer's description was of a small man with a ruddy complexion who needed a shave. This description was not inconsistent with having shoulder-length hair or a relatively indistinct mustache, and, while a full beard or a distinct, well-shaped mustache would probably be mentioned by an observer, these features are subject to easy alteration and cannot confine the police rigidly in assembling photo arrays. Compare *Commonwealth* v.

*Napolitano*, 378 Mass. 599, 602-603 (1979). The array, which was preserved and is before us, was fair.

*Judgment affirmed.*

*William C. McPhee* for the defendant.
*Mary O'Sullivan Smith,* Assistant District Attorney, for the Commonwealth.