COMMONWEALTH *vs.* EDWARD H. HUBBARD.

No. 96-P-1558.

Worcester. November 6, 1997. - August 5, 1998.

Present: PERRETTA, KASS, & LAURENCE, JJ.

*Evidence,* Prior misconduct, Argument by prosecutor. *Assault by Means of a Dangerous Weapon. Practice, Criminal,* Comment by prosecutor, Conduct of prosecutor.

At the trial of complaints for simple assault and assault with a dangerous weapon, statements made by the prosecutor during her opening statement and closing argument, as well as in her questions to the defendant upon cross-examination, concerning an alleged prior bad act of the defendant, were without support in the admissible evidence and prejudiced the defendant to a degree requiring reversal of his convictions. [278-282]
At the trial of a complaint for assault with a dangerous weapon, the judge's instructions to the jury failed to focus the jury's attention on whether the defendant, in holding an unloaded rifle with the barrel pointed in the air, intended to use the weapon in a deadly manner. [282]

COMPLAINTS received and sworn to in the Fitchburg Division of the District Court Department on November 14, 1994.

The cases were tried before *Austin T. Philbin,* J.

*Albert G. Hayeck* for the defendant.

*Anne S. Manzello,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On the night of October 9, 1994, the defendant and his wife were in the "safe-room" of their convenience store when they heard loud noises outside and saw someone leap over their eight-foot wooden fence and appear behind the door leading to the rear yard. The defendant instructed his wife to open the metal door leading from the safe-room into the store and to call the police. He took an unloaded shotgun and a handful of ammunition shells and ran through the store to the outside. There he saw thirteen or fourteen teenagers whom he ordered to stand against a wall until the police arrived. The ensuing events

led to criminal complaints charging the defendant with two separate offenses, simple assault and assault with a dangerous weapon. The jury did not accept that the defendant had acted in self-defense and found him guilty on both complaints. On appeal, he claims that the trial judge erred in allowing the jury to consider evidence of an alleged prior bad act and in instructing them on the issue of self-defense.[1]

1. *The evidence.* We recite the evidence pertinent to the issues raised on appeal, taking it in the light most favorable to the defendant. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980) ("A defendant is entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue"). The defendant testified that, when he heard loud noises and saw someone leap over his fence and appear outside the door to his backyard, he feared for his safety as well as that of his wife, whom he instructed to summon the police. When he ran outside the store and saw a throng of teenagers, some of whom were running away while others sat in their cars, he hollered for them to stop and ordered the others out of the cars. He then herded the teenagers into a group and told them to stand against a wall until the police arrived.[2] The defendant testified that he neither cocked nor loaded the rifle, that, at all times, the safety was on and that he carried the gun at "port arms," that is, with the barrel pointed up into the air.

2. *Prior bad act.* Prior to trial, the Commonwealth requested and obtained permission to present evidence that on May 21, 1991, the defendant had been arrested and charged with assault by means of a dangerous weapon, that he had gone to the grounds of a local high school where he "sought and then assaulted several teenagers with a fully-loaded .22 caliber handgun," and then claimed self-defense on the criminal charges "even though he sought out the victims." We begin with the well-established premise that evidence may not be introduced to show that a defendant previously misbehaved for purposes of

---

[1]Although the Commonwealth argued at trial that the defendant was not entitled to a self-defense instruction, it concedes on appeal that the instruction was required.

[2]One of the teenagers testified that, in ordering her to join the group and stand against the wall, the defendant nudged her with the barrel of his rifle. That accusation led to the defendant's conviction on the charge of simple assault.

showing his bad character or propensity to commit the crime charged but that such evidence is relevant and admissible for some other appropriate purpose, such as knowledge, intent or motive, provided that its probative value is not substantially outweighed by its potential for prejudice. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986); *Commonwealth* v. *Fallon*, 423 Mass. 92, 97 (1996). Absent palpable error, a trial judge's discretion will not be overturned. See *Commonwealth* v. *Travis*, 408 Mass. 1, 13 (1990). We need not decide whether the trial judge abused his discretion in allowing the Commonwealth's motion.[3] Rather, our conclusion, that the defendant's convictions must be reversed, is based upon our determination that the Commonwealth failed to present any admissible evidence of the events detailed in its motion in limine, failed to abide by the trial judge's rulings on the defendant's objections, and failed to use any evidence of the alleged misconduct within the limitations of the basis of its admissibility.

During her opening statement, the prosecutor (who is not counsel on this appeal) informed the jury that they would hear evidence that after some dispute in 1991, the defendant went to the local high school with a handgun and, "again, confronted a group of kids, unarmed, and threatened to use the gun on them. Again, unarmed teenagers. He has the gun." Evidence of this event consisted of the following.

According to the testimony of the police officer called by the prosecutor to testify to the events of May 22, 1991, he was dispatched to the local high school on that date. There he spoke with the school principal who advised him that there had been a problem with a firearm and some children "from out of town at the . . . entranceway to the high school, in the parking lot." The defendant's objection and motion to strike the hearsay testimony concerning the principal's statements was sustained. However, the jury were not instructed that these inadmissible statements could not be considered. The officer then went on to explain that, after speaking with the principal, he interviewed the teenagers involved as well as the defendant. As to the interview with the defendant, the officer testified that the defendant told him that he had fleetingly displayed a handgun to the group of teenagers because he had been very frightened by one among the group, a "very tall boy."

---

[3]Each time the prosecutor inquired of witnesses about or made mention of the alleged event, the trial judge promptly and correctly instructed the jury on the limitations of the probative value of the evidence.

Although it appears from the transcript that the identities of the teenagers involved in the 1991 incident were known and that they were available as witnesses, the prosecutor chose not to call any of them or the school principal to testify (notwithstanding the concerns of the trial judge about the state of the evidence of that event) and, instead, announced that she had completed the evidence in her case.

The Commonwealth having rested its case, the defendant called the chief of police who testified, essentially, that he had made the decision not to pursue criminal complaints against the defendant for the events in issue until about one month later when the mother of one of the teenagers involved demanded that criminal complaints be sought. In response to questions by the prosecutor on cross-examination, the chief of police testified that, after the 1991 incident, he suspended the defendant's permit to carry a gun "[f]or an *allegation* that [the defendant] carried a handgun on school property and threatened three individuals with it" (emphasis added).

Notwithstanding the trial judge's rulings sustaining the defendant's objections to the prosecutor's questions, the prosecutor managed to convey to the jury the following information: that, based upon the allegations concerning the 1991 incident, charges against the defendant had been brought, that the chief had accordingly suspended the defendant's gun permit from May 28, 1991, to April 10, 1992, and that the defendant's permit was reinstated on the latter date because criminal charges were no longer pending against him. After objections were sustained to the prosecutor's questions concerning whether the defendant had admitted to the criminal charges brought against him on account of that incident or whether they had been dismissed, the prosecutor asked the chief about the duration of the suspension of a permit based upon an allegation pending in the courts for resolution. The chief responded that where there is court action the permit is not restored until the action is resolved.

Upon cross-examination, the defendant responded to the prosecutor's questions by rejecting her assertion that there was no doubt that he had pointed a gun at someone in 1991 and by stating that the charge had been dismissed. Faced with this testimony, the prosecutor repeatedly put to the defendant questions whether he had admitted to sufficient facts to establish his guilt of the accusation of the 1991 incident. To each question,

the defendant answered that he had made no such admission. In response to the defendant's answers, the prosecutor put the following to him, "If I was to go downstairs into this court, sir, and get the dockets and show you those, you would be saying that the court documents are incorrect?" Again, the defendant's objections were sustained. Nonetheless, the prosecutor continued to put questions to the defendant (over his objections, which were, again, sustained) that called upon him to deny her assertion that the charges had been dismissed only upon his admission to his guilt and his completion of a period of probation.

Irrespective of whether the prosecutor did not understand the defendant's objections and the trial judge's rulings or whether she chose to ignore them, she stated in her closing argument that the defendant, in 1991, had lost his permit to carry a gun and within two years had it taken away "for doing the same thing again," for "[p]ointing a gun at a bunch of teenagers" and stressed that his present actions were "just like" those of 1991, "[j]ust like it happened in 1991," that "[h]e was going out to be the aggressor just as if [inaudible] he was the aggressor in 1991."

The testimony of the police officer relating what the school principal and teenagers told him in 1991 was hearsay to which the defendant made objection and motions to strike. Further, contrary to the prosecutor's opening statement and closing argument, there was no evidence, admissible or otherwise, that showed the defendant to be the aggressor in that incident. The only admissible testimony of the officer was the statement made to him by the defendant, that he had fleetingly displayed a handgun to a group of teenagers because he had been very frightened by one of them. The testimony of the chief of police contained no information concerning the incident itself and dealt, instead, with his action based upon the allegation.

Even assuming it was appropriate for the prosecutor to show that the defendant had admitted to wrongdoing in 1991, see *Commonwealth* v. *West*, 312 Mass. 438, 440-441 (1942), such a showing must be made by admissible evidence rather than by a prosecutor's assertion in questions as to matters contained in undisclosed court records.[4]

We conclude that the statements made during the prosecutor's

[4]After the close of all the evidence, the prosecutor requested "to bring out the docket entry from the assault by a dangerous weapon where [the defendant] admitted to sufficient facts." Defense counsel represented to the trial judge at

opening statement and closing argument (see *Commonwealth* v. *Bearse*, 358 Mass. 481, 487 [1970]) as well as in her questions to the defendant upon cross-examination, all without support in the admissible evidence, prejudiced the defendant to a degree requiring reversal of his convictions.[5] See *Commonwealth* v. *Rosado*, 428 Mass. 76, 79-80 (1998).

3. *The jury instructions.* We need not determine whether reversal of the defendant's convictions is also required by reason of the trial judge's instructions on self-defense. It is sufficient to state that we think the instructions failed to focus the jury's attention on the crucial question to be determined by them in view of the evidence: whether the defendant, in holding the unloaded rifle at "port arms," intended to use that weapon in a deadly manner. See *Commonwealth* v. *Cataldo*, 423 Mass. 318, 324-326 (1996); *Commonwealth* v. *Yazbeck*, 31 Mass. App. Ct. 769, 771 (1992).

4. *Conclusion.* It follows from what we have said that the defendant's convictions are reversed, and the verdicts are set aside.

*So ordered.*

---

sentencing, without contradiction by the prosecutor, that the only record of the defendant was a "continuance without a finding that was successfully completed in 1991."

[5]It is open to the trial judge presiding at retrial to exercise his or her discretion to consider anew whether the probative value of competent evidence of the 1991 incident outweighs its potential for prejudice.