## COMMONWEALTH *vs.* LUMAN MARTIN.

No. 97-P-1107.

Suffolk. October 16, 1998. - December 29, 1999.

Present: ARMSTRONG, KASS, & FLANNERY, JJ.[1]

*Controlled Substances. Evidence,* Expert opinion.

The evidence at the trial of an indictment for possession of cocaine with intent to distribute warranted the judge's denial of the defendant's motion for a required finding as to so much of the indictment as charged intent to distribute. [392-393]

Any error in the trial of an indictment did not create a substantial risk of a miscarriage of justice. [393]

INDICTMENT found and returned in the Superior Court Department on August 30, 1994.

The case was tried before *Thayer Fremont-Smith,* J.

*James Hammerschmith,* Committee for Public Counsel Services, for the defendant.

*Maryanne E. Kilty,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant, one of a small group standing on a street behind the Bromley-Heath housing project in the Jamaica Plain section of Boston, on seeing an unmarked but recognizable police cruiser drive into view, grabbed a bicycle from one of his companions and pedaled at a high rate of speed between two project buildings through an alley that was unpassable by car. Wishing to enter the project grounds unnoticed but having been recognized, the officers drove to a different point of access and entered the project on foot. They split up in a pattern that they knew, based on their familiarity with patrolling the project, would cause a person fleeing from one officer to be

---

[1]This case was argued before Justices Armstrong, Kass, and Flannery. Following Justice Flannery's death, Justice Porada was added to the panel and participated in the decision.

headed toward the other. The defendant, still on the bicycle, saw Detective Fratalia and sped away from him on a route that led to Detective Merner. Before spotting Merner, the defendant threw a plastic bag over a chain link fence. Merner saw the bag land and apprehended the defendant. Fratalia came up a minute or two later and held the defendant while Merner retrieved the plastic bag. It was a sandwich bag, and within it were eighteen individually packaged small rocks that the officers, with their extensive experience in narcotics trafficking, recognized as crack cocaine, packaged for sale as "dime bags," at a street price of $10 per bag. In custody, the defendant, whom the officers knew, denied that the package belonged to him, but offered to help the officers apprehend a person in the project suspected of possessing a sawed-off shotgun in return for leniency. The officers released the defendant from custody that evening but prosecuted him for possession with intent to distribute when he failed to set up the gun offender.

The defendant was charged with, and convicted of, possession of cocaine with intent to distribute. The only witnesses at the trial, in addition to the State laboratory chemist who analyzed the rocks and assigned a total weight of 2.04 grams, were the two detectives. They were permitted to give expert testimony that the circumstances, particularly the packaging, were more consistent with an intent to distribute than with possession for personal use only. The more usual way of purchasing in quantity for personal use was to purchase approximately one-eighth of an ounce, known as an "eight ball," which would typically cost anywhere from $125 to $300, and which could be split into thirty-five dime-bag size pellets. (For one with the requisite cash, one-quarter ounce could be had for $300 or $400.) The detectives knew the defendant and did not know him to be heavily addicted to cocaine. One of the officers said that he had in the past made many arrests for drug trafficking on the heavily traveled street next to the project where the defendant was first spotted. At such a location, one officer testified, a seller could reasonably expect to dispose of twenty dime bags in less than one hour.

On all the evidence, the judge did not err in denying the defendant's motion for a required finding as to so much of the indictment as charged intent to distribute. While 2.04 grams is a small amount, the defendant's intent to distribute could be inferred not from the amount but from the manner of packaging

and the general circumstances, including the fact that the defendant was spotted at a location high in drug activity, and the vigor of his attempt to avoid apprehension — an attempt that could reasonably be thought excessive for a mere user. Those factors, coupled with the police officers' expert testimony, make the case substantially indistinguishable from *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728 (1992), in which the defendant was apprehended in an area known for drug sales with ten glassine packets of heroin worth $180 to $200. Police officers gave expert testimony similar to that given by Detectives Merner and Fratalia in this case.

We recognize that the trial was not without flaws. In particular, Detective Merner at one point couched his expert opinion in a form forbidden by *Commonwealth* v. *Woods*, 419 Mass. 366, 375 n.13 (1995),[2] despite the question having been framed in "consistent with" form, cf. *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 581 (1998), but no objection or motion to strike was raised against Merner's answer. In addition, the prosecutor, presumably based on the officers' testimony that they knew the defendant and did not know him to be heavily addicted, stretched fair inference too far when he argued in closing to the jury that "Luman Martin doesn't use cocaine. He is not addicted to cocaine." Again, the point was not brought up at the trial, when the judge might have taken curative action, but is raised for the first time on appeal. See *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 400 (1975). No evidence had been offered suggesting that the defendant might in fact be a user. The defense was only that the Commonwealth had not disproved the *possibility* that the cocaine might have been for the defendant's personal use. There was no substantial risk of a miscarriage of justice.

*Judgment affirmed.*

---

[2]"Based on my training and experience, it is my belief that this cocaine was packaged so as to distribute and be distributed by the defendant, Mr. Martin, in $10 increments."