NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-183                                           Appeals Court

COMMONWEALTH  vs.  JOSE VERA.

No. 14-P-183.

Worcester.    March 2, 2015. - September 11, 2015.

Present:  Katzmann, Milkey, & Agnes, JJ.


Evidence, Prior misconduct, Motive, Relevancy and materiality,
     Information stored on computer. Internet. Rape. Indecent
     Assault and Battery. Open and Gross Lewdness and
     Lascivious Behavior. Obscenity, Dissemination of obscene
     matter to minor. Practice, Criminal, Assistance of
     counsel.



     Indictments found and returned in the Superior Court
Department on August 19, 2011.

     The cases were tried before David Ricciardone, J.


     William A. Korman for the defendant.
     Susan M. Oftring, Assistant District Attorney, for the
Commonwealth.


     KATZMANN, J.  The defendant appeals from his convictions by

a Superior Court jury of six counts of rape and abuse of a child

under sixteen, G. L. c. 265, § 23; two counts of indecent

assault and battery on a child under fourteen, G. L. c. 265,

§ 13B; one count of open and gross lewdness, G. L. c. 272, § 16; and two counts of dissemination of matter harmful to a minor, G. L. c. 272, § 28. The principal issue in this appeal is whether the prior bad act evidence of the defendant's Internet searches for pornography involving young girls was properly admitted, or whether it was admitted in error because it was impermissible character or propensity evidence. We affirm.

Background. The central evidence in the case was presented through the testimony of the victim, R.M., who was ten at the time of trial. The victim's mother, S.G., also testified, as well as a first complaint witness, F.C., who was the daughter of one of S.G.'s close friends. During the period of abuse, the victim, R.M., lived with her mother, younger brother, and sister. The defendant was the mother's boy friend and the father of R.M.'s sister. He did not live with the family, but did stay overnight at their apartment "very often" and sometimes supervised the children.

The abuse occurred over a period of several years. The victim testified that one day when she was four years old, she was lying on her mother's bed watching television when the defendant approached her and placed his hands under her clothes and inserted his fingers into her vagina. He continued the act for several minutes and then stopped when the victim's mother called for help with groceries.

When R.M. was five years old, the defendant took a bath with her and pulled his penis out of his boxer shorts.  The defendant then began to masturbate in the tub and he forced R.M. to rub his penis; the defendant ejaculated.  The defendant told the victim that "the white stuff" "was to make babies."  S.G. entered the bathroom and saw the defendant with an erect penis.  She asked him what he was doing and the defendant responded that it was an accident.  Another time when S.G. was away, the defendant sat with R.M. on a living room couch and played an "On Demand" pornographic adult movie on the television.  In the movie, the male and female participants, an attorney and client, undressed and engaged in sexually explicit behavior.  The defendant began to "copy[] the movie" by touching R.M.'s breasts and vagina with his tongue and fingers.  When R.M. was seven or eight years old, the defendant again entered the living room while R.M. was watching television.  The defendant sat on the couch, pulled down his pants, and forced R.M.'s mouth onto his penis.  The assault lasted for ten minutes.  The last sexual assault happened in the defendant's apartment when R.M. was eight years old.  R.M. was watching a children's movie in the defendant's bedroom when her brother discovered an adult digital video disc (DVD) with a nude woman on the cover.  The defendant made R.M.'s brother replace the children's movie "Thomas the Train" with the adult movie, and then he removed R.M.'s brother

from the room.  The defendant then laid down on the floor with R.M. and began to copy the sexually erotic scenes with R.M., which included indecently touching her and raping her.[1]

The victim's mother testified that there was a desktop computer in the living room of her home and that only she and the defendant had access to the Internet pass code.  Michael Kalmbach, a digital forensic specialist, testified that he conducted a forensic examination of the computer, which extracted a history of Internet searches involving young girls.

---

[1] The incidents that were the bases for the indictments were categorized by the Commonwealth in its closing argument as follows:

"I would ask you to find the defendant guilty of all the indictments before you:  Six counts of rape of a child, that first incident in the bedroom, where he got in bed with her, he put his finger inside her vagina; the next incident on the couch, where he put his finger inside her vagina; the incident on the couch, where he put his penis inside her mouth; the last incident, where he put his finger inside her vagina, his tongue inside her vagina and his penis inside her vagina; two counts of indecent assault and battery for touching her breasts and her vagina on the outside; dissemination of harmful matter to a minor, the two videos, the female lawyer and her client that go outside and take each other's clothes off and touch each other; the other video that her brother finds, that the defendant puts in the DVD player, where a male touches a female by licking her breasts, touching her vagina, inserting his finger in her vagina, inserting his tongue and his penis inside her vagina; and open and gross lewdness for the bathtub, for taking his penis out, putting his hand on it and putting it in an up and down fashion in front of [the victim]."

In his testimony, he identified specific sites that had been searched on the computer.

Worcester police Detective Richard Boulette testified that he interviewed the defendant in May, 2013, as part of an investigation. After the defendant received Miranda warnings, he agreed to waive his rights and provided an audio-video recorded statement, which was played in redacted form for the jury and entered in evidence. In the interview, the defendant said that he watched the younger children often but that it was rare that he ever babysat R.M. (notwithstanding the fact that he had been in a four-year relationship with her mother and had stayed overnight in the same house frequently). With respect to the bathtub incident, the defendant claimed that his penis accidentally fell out of his boxer shorts. He denied ever harming the victim or engaging in any sexual contact, and first said that he did not watch pornography, but then said that he did watch it, but only at his friends' houses. Regarding the pornographic DVD, he remembered that R.M.'s younger brother had found a DVD, but said that he (the defendant) was only holding it for a friend, and did not show it to R.M. At one point during the interview, the defendant said, "Come on serious? A 300 pound guy slamming the girl on the floor or whatever the allegation." In response, the detective noted that he had not

told the defendant that the movie showed the girl on the floor, but that in fact was R.M.'s allegation.

Dr. Rebecca Moles, a child abuse pediatrician, testified that she had examined the victim when she was eight years old. She testified that the examination was normal for an eight year old, but that "a normal examination does not rule out that penetration occurred or that sexual abuse has occurred."

The defendant did not testify at trial. In closing argument, defense counsel characterized the victim's allegations against the defendant as pure fabrication created in a desperate effort to get him out of the household in which she lived. He said, "This was an act of a young girl, a sad, young girl, who was sick and tired of Jose Vera fighting with her mother, fighting with her family, and fighting with her and her siblings." Seeking to further cast doubt on the victim's charges, defense counsel argued that although the victim claimed to be "brutal[l]y sexually assaulted from the time that she was four years old to eight years old," she delayed in raising her allegations until the end of the abuse. He also pointed to what he believed were incredible aspects of the victim's allegations including the bathtub incident, and, regarding the movie and DVD, suggested that the victim knew her mother's password to view "On Demand" movies. He suggested that although the victim viewed the movie she described, as well as the DVD, she did not

view them with the defendant, and, further, that her report of abuse attributed to the defendant the actions she had viewed in the movie and DVD. Defense counsel also asked the jury to focus on the defendant's repeated statements during the recorded video interview denying that he had perpetrated any abuse. Defense counsel further sought to create a reasonable doubt by pointing to the testimony of the victim's pediatrician, who said that there were no indications of sexual assault.

Discussion. 1. Internet searches. The defendant argues that the Internet searches, which were admitted over his objection, were irrelevant and constituted prior bad acts that constituted impermissible character or propensity evidence. He contends that the judge erred in allowing that evidence, and that he is entitled to a new trial.

As has been noted, the victim's mother testified that there was a desktop computer in the living room of her home and that only she and the defendant had access to the Internet pass code. The investigating detectives removed the computer from the home and brought it to the New England State Police Information Network (NESPIN). Michael Kalmbach, a digital forensic specialist for NESPIN, conducted a forensic examination of the computer. He used several software programs to extract a history of Internet searches that had been performed on the computer, and discovered a number of searches involving young

girls.  In his testimony, he identified specific searches, including:  "young raw porn," "teen TV porn," "young playground porn," "hot teen porn," and "first time home teen porn."[2] Kalmbach opined that someone had used the computer by typing and searching those terms.[3]  The defendant objected to admission of evidence of these searches, arguing that they were prior bad acts and should be excluded because they were extremely prejudicial and constituted impermissible character or propensity evidence.

---

[2] Other searches that Kalmbach testified to finding included: "young pub porn," "young home raw porn," "young girs [sic] life fucking porn," "young frist [sic] time homemade porn," "young bup porn," "teen sleeping ponr [sic]," "sleeping young porn," "real TV porn," "hot cute teen porn," "homemade teen hidden sex tape porn," "hidden cameras porn," "first time teen fuck porn," "bing cook teen teen porn," "angle teen porn," "young girls live fucking porn," "young first time homemade porn," "young playground," and "teen real TV porn."

[3] The identity of the person who conducted the Internet searches was disputed at trial.  The victim's mother, S.G., voluntarily provided the computer for investigation.  Kalmbach testified that there was no way to identify who the actual user was at the time of the Internet searches.  S.G. testified that she had not conducted the searches, and, during his police interview, the defendant denied conducting the searches.  The jury were entitled to credit the mother's testimony that only she and the defendant had access to the pass code, and that she had not conducted the Internet searches.  Based on the evidence at trial, the jury reasonably could have inferred that the defendant was the one who conducted the searches.  On appeal, the defendant makes no argument that the computer searches were conducted by the victim's mother.  Compare Commonwealth v. Carey, 463 Mass. 378, 388 (2012).  The Internet searches ultimately were admitted as prior bad act evidence to show intent, lack of mistake, and motive.

As advanced in its motion in limine and later at trial, the Commonwealth noted that the defendant was charged with various sex crimes against the minor victim, including multiple incidents where the defendant "sexually assaulted [the victim] by touching her breasts, touching her vagina on the inside and outside, and inserted his penis inside her vagina, . . . [and] showed her adult pornography."[4]  The Commonwealth argued that the defendant told police that the victim misconstrued his actions, that his penis was only exposed accidentally, and that he had never watched pornography in the home where the victim lived. Based upon the nature of the indictments and the defendant's denials to police, the Commonwealth argued that the defendant's Internet Web site searches for pornography involving young girls were relevant and probative, not to prove bad character, but rather to establish motive, state of mind, intent, and lack of mistake or accident.

While acknowledging that he was "clearly mindful" of the prejudicial impact to the defendant, the judge concluded that evidence of "a person who specifically seeks out father/daughter pornography websites" was relevant and probative of the

---

[4] The motion in limine's statement of facts also averred that the victim "describe[d] incidents where the Defendant would show her pornographic websites."  However, in arguing the motion, the Commonwealth acknowledged that none of the charges against the defendant were based on this allegation.

defendant's motive.  The judge found that the words used by the defendant to search the Web sites "tend to show a lack of mistake and a particular intent on the part of [the defendant]." The searches that were actually admitted at trial involved "young girl pornography."  The judge ruled that "[o]n the totality of the circumstances, it does tend to fit the bill of our case law with regard to lack of mistake, intent, motive and modus operandi, and further goes to his credibility in terms of the statement that he made, where under all the circumstances he denies use of pornography, let alone child pornography."

The judge provided limiting instructions during the trial in connection with the testimony about the Internet searches for pornography involving young girls.  He issued one limiting instruction prior to Kalmbach's testimony and another in the final charge.  In the final charge, which was similar to the first limiting instruction, the judge provided the following instructions to the jury:

> "You may not take [the Internet searches] as a substitute for proof that the defendant committed the crimes charged, nor may you consider [them] as proof that the defendant has a criminal personality or bad character. But you may consider [them] solely on the limited issue of motive, state of mind, intent, plan, or absence of mistake or accident on the part of the defendant.  You may not consider this evidence for any other purpose. Specifically, you may not use it to conclude that if the defendant committed [sic] these Internet searches that he must also have committed these charges [sic]."

"It is well settled that the prosecution may not introduce evidence that a defendant has previously misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." Commonwealth v. Copney, 468 Mass. 405, 412 (2014) (citation omitted). Commonwealth v. Dodgson, 80 Mass. App. Ct. 307, 312 (2011). However, "[s]uch conduct . . . may be admissible for other purposes, such as to show a 'common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive.'" Ibid., quoting from Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). See Mass. G. Evid. § 404(b)(2), at 44 (2015). Where evidence is relevant for one of those purposes -- under the "more exacting standard" applied to "other bad acts" evidence because such evidence is "inherently prejudicial," Commonwealth v. Crayton, 470 Mass. 228, 249 n.27 (2014) -- it should be excluded if its "probative value is outweighed by the risk of unfair prejudice to the defendant, even if not substantially outweighed by that risk." Ibid.

With respect to the charge of open and gross lewdness, stemming from the bathtub incident, the defendant claimed his exposure was accidental. He repeatedly told the police that his genitalia were accidentally exposed while he was in the bathtub with the victim. Evidence of Internet searches for young girl pornography is relevant here because it is highly probative of

the defendant's intent and the lack of innocent mistake in exposing his genitals to a young girl.  See Commonwealth v. Wallace, 70 Mass. App. Ct. 757, 765 (2007) (where the defendant claimed that the touching of a young girl's breast was accidental, items found in the defendant's automobile, including small-sized girls' or womens' underwear, photographs of clothed young girls playing at outdoor locations, photographs of nude adults engaged in sexual activity, and two pornographic magazines entitled "Pure Eighteen," which contained pictures of teenage girls, were properly admitted because they were "substantive evidence of the defendant's voyeuristic interest in sexual matters and young females").  The evidence in Wallace was "admissible to show [the defendant's] sexual intent, predatory motive, and intentional rather than accidental touching of the victim," id. at 758, and was properly admitted for those reasons here as well.

With respect to the other charges -- rape and abuse of a child, indecent assault and battery on a minor, dissemination of matter harmful to a minor -- the defendant denied all allegations in his interview with the police.  The defendant repeatedly stated that he did not engage in sexual behavior with the victim and that he had no desire to harm her.  The computer search history, however, was admitted in evidence to prove that the defendant entered the word "porn" together with "young,"

"playground," "teen," "girls," and other similar themes, and established that the defendant actively and purposely sought sexually explicit material relating to young girls.

The contested evidence here is relevant. "The case law is particularly clear that evidence of uncharged sexual misconduct, when not too remote in time, 'is competent to prove an inclination to commit the [acts] charged . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue.'" Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 817-818 (1998), quoting from Commonwealth v. King, 387 Mass. 464, 470 (1982). "That the [contested evidence] may . . . have an inflammatory effect on the jury does not render [it] inadmissible as long as [it] possess[es] evidentiary value on a material matter." Commonwealth v. Carey, 463 Mass. 378, 389 (2012), quoting from Commonwealth v. Olsen, 452 Mass. 284, 294 (2008). "Evidence is relevant if it has a 'rational tendency to prove an issue in the case,' . . . or render a 'desired inference more probable than it would be without the [evidence].'" Commonwealth v. Keo, 467 Mass. 25, 32 (2014), quoting from Commonwealth v. Sicari, 434 Mass. 732, 750 (2001), cert. denied, 534 U.S. 1142 (2002). The evidence does not need to be conclusive of motive in order to be admissible. Commonwealth v. St. Germain, 381 Mass. 256, 271 (1980). If

evidence "merely suggests rather than 'clearly shows' a motive," it may still be admissible.  Ibid.

The defendant argued that the prejudicial effect of the evidence far outweighed its probative value.  We disagree, acknowledging, as the judge did below, that the evidence was prejudicial, but admissible because it was highly probative of the defendant's intent and motive.  Here, the search for pornography involving young girls is "competent to prove an inclination to commit the [acts] charged . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue."  Commonwealth v. Hanlon, 44 Mass. App. Ct. at 817 (citation omitted).  It was also admissible as "substantive evidence of the defendant's voyeuristic interest in sexual matters and young females."  Commonwealth v. Wallace, 70 Mass. App. Ct. at 765.  See id. at 758 (evidence was "admissible to show his sexual intent [and] predatory motive"); Commonwealth v. Bradshaw, 86 Mass. App. Ct. 74, 78-80 (2014) (judge, after carefully engaging in the required balancing of prejudice and probative value did not abuse his discretion in admitting in evidence the defendant's statement that he had been having desires for boys ranging from age nine years to fourteen years -- which included the age of the alleged victim -- because the statement was probative of a motive to engage in the alleged act

and of the defendant's state of mind at the time of the incident).[5]

"We entrust questions of relevancy and prejudicial effect to the sound discretion of the trial judge."  Commonwealth v. Carey, 463 Mass. at 388.  We uphold the judge's decision unless we conclude that he "made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation and citation omitted).

We conclude that the judge did not abuse his discretion in allowing the evidence; he carefully engaged in the balancing of probative value versus prejudicial effect.  See Commonwealth v. Bradshaw, 86 Mass. App. Ct. at 79.  The judge was selective in what he allowed, excluding several Internet searches because

_____

[5] We are unpersuaded by the defendant's contention that the prior bad act evidence was rendered irrelevant because, when the prosecutor questioned the victim about the "youngporn.com" Web site ("Did the defendant ever show you anything on the computer?"), the victim answered, "He didn't, like, directly show me."  The prosecutor attempted to make an offer of proof that the expected testimony was only one of multiple searches, but he then voluntarily agreed to "move on" from the testimony. Quite apart from the Web sites the victim may or may not have seen, the searches by the defendant were relevant and probative to establish the defendant's lack of mistake, intent, motive, and state of mind when he committed the sexual crimes.  See Commonwealth v. Maimoni, 41 Mass. App. Ct. 321, 327 (1996) ("Still further and most important, [prior bad acts occurring during the same week as the alleged crime] could be taken as illustrative of the defendant's mental state at the time").

they were too inflammatory, where they included the term "rape," compare id. at 80, and excluding another search for relevancy reasons.  He also ordered the prosecutor to reduce the number of searches entered in evidence -- further indication that he was being "commendably sensitive to the potential for undue prejudice."  Commonwealth v. Helfant, 398 Mass. at 225.  Moreover, the limiting instructions throughout the trial instructing the jurors to use the evidence only for the proper purposes of showing the defendant's motive, state of mind, intent, plan, or absence of mistake or accident were sufficient to prevent undue prejudice.  See Commonwealth v. Anderson, 445 Mass. 195, 214 (2005).  "We presume that the jury followed the judge's instruction."  Commonwealth v. Pillai, 445 Mass. 175, 190 (2005).

Furthermore, the Internet search evidence especially contradicts the defendant's denial of the allegations in the indictments, as well as his assertions that he never watched pornography, that the victim was fabricating the crimes, and that "he never had one iota of intent to harm" her.  The judge allowed the testimony to come in for the additional purpose of refuting the defendant's denials.  This purpose was proper as well.  See, e.g., Commonwealth v. Maimoni, 41 Mass. App. Ct. 321, 327 (1996) (evidence of prior bad acts "admissible on the Commonwealth's behalf for the elementary purpose of countering

the defendant's protestations following [the victim's] disappearance that he would not sail accompanied only by a woman not his wife").

Finally, even if it was error to allow the Internet search evidence, when viewed in context of the entire case, it is unlikely to have unduly prejudiced the defendant.  Other evidence the jury heard included significantly more inflammatory and graphic testimony from the victim and her mother about sexual assaults and rape, beginning when the victim was only four years old and ending when she was eight years old.  The jury heard testimony about forcing the victim to watch and replicate pornography, and bathing with the young victim with his penis exposed, while forcing her to rub his penis, resulting in ejaculation.  The jury also saw a one and one-half hour interview with the defendant from which the jury could infer guilty knowledge.[6]  We can say with fair assurance that revealing

_____

[6] For example, the taped interview included the following: When questioning the defendant about the pornographic DVD and his conduct associated with its viewing, the detective asked, "Why would she make this up? . . . She claimed how in the movie, the guy had licked the lady and licked the vagina and . . . ."  The defendant, interrupting him, stated, "You're gonna try to say that I did that to her."  The detective responded affirmatively, "That's what she says.  She says you did everything in that movie to her, you enacted that."  In addition, as noted earlier, at one point in the interview the defendant asked incredulously about a 300 pound man slamming a girl on the floor, and the detective answered that that, too, was the allegation.

the various searches the defendant conducted on the Internet did not "substantially sway[]" the jury. Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

2. Ineffective assistance of counsel claim. We briefly address and reject the defendant's ineffective assistance of counsel claim. The defendant asserts this claim in his direct appeal rather than through the preferred method of a motion for new trial accompanied by affidavits. See Commonwealth v. Diaz, 448 Mass. 286, 289 (2007). He argues that his attorney rendered ineffective assistance of counsel when he questioned Kalmbach, the NESPIN expert, as to the date of the Internet searches because the questioning opened the door to the revelation of other Internet searches.[7] "Because the defendant raises [this] claim[] for the first time on direct appeal, [its] factual basis must appear 'indisputably on the trial record' for us to resolve [it]." Commonwealth v. Dargon, 457 Mass. 387, 403 (2010),

---

[7] The Commonwealth had agreed to limit its questioning regarding specific Internet searches to one date, February 26, 2011, and was careful to avoid asking questions on direct examination regarding the specific date because there had been searches on a broad range of dates. On cross-examination, defense counsel elicited that the searches to which Kalmbach testified all occurred on February 26. Because the judge determined that defense counsel's "specific question regarding dates [was asked] . . . to make it sound like this was a very, very isolated, maybe singular incident, at a time when maybe the defendant wasn't even in the home," he ruled that the Commonwealth on redirect could elicit that the Web site searches were not limited to the ones testified to in court, but "there were others . . . [i]n the dozens."

quoting from Commonwealth v. Zinser, 446 Mass. 807, 811 (2006). Here, the record includes substantial discussion about the line of questioning now in issue and suggests that engaging in this questioning was a tactical decision made by defense counsel. Cocounsel explained that a reason for these questions was to show that the defendant could not have conducted the Internet searches Kalmbach testified to because the defendant was not in the home on that date. She declared, "[I]t was certainly the correct decision for us, and not intentionally to be misleading," but rather to alert the jury to the fact that the defendant did not live there. On our review of the record, we conclude that counsel's choice was not manifestly unreasonable, and that the defendant was not deprived of a substantial ground of defense. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

Judgments affirmed.