NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-109

COMMONWEALTH

vs.

DEBRA M. MILESI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant, Debra M. Milesi, was convicted of motor vehicle homicide while operating under the influence of alcohol, leaving the scene of a motor vehicle collision causing death, and negligent operation of a motor vehicle. On appeal, she contends that the evidence at trial was insufficient to warrant a consciousness of guilt instruction, and that the failure to request a Bowden instruction constituted ineffective assistance of counsel. We affirm.

Background. On September 29, 2018, at approximately 1 A.M., Adams Police Department Officers Dakota Baker and Nicholas Dabrowski responded to the defendant's home following a report that the defendant had threatened to commit suicide. The officers conducted a protective sweep of the home and observed

open bottles of alcoholic beverages and empty prescription pill bottles, but the defendant was not home.  The officers left the home, entered their respective vehicles, requested a description of the defendant's car, and headed toward Summer Street to "check" local establishments and try to locate the defendant.

At or near the same time, Susan Knapp was near the area of East Hoosac Street and observed a maroon vehicle "going really fast down the hill."  She saw that vehicle strike the victim, who was walking toward his own vehicle.  Knapp heard "like a thud" and saw the maroon vehicle continue down the hill, but then return.  Knapp saw the driver, whom she recognized as the defendant, get out of the maroon vehicle and pull on the body of the victim, Jeremy Bernard.  Knapp said to the defendant "listen, you hit him . . . you can't touch him."  The defendant responded that "she didn't hit him."

Around the same time, Brenda Danforth was in a vehicle in the same area as Knapp and heard "a loud crash."  Danforth looked in her side-view mirror, saw a "dark red SUV-type of car go by," and observed that vehicle stop in the middle of the road.  She watched a woman with blonde hair (the defendant) get out of the vehicle and saw her "pulling on something."  Danforth left her vehicle, went to see if the woman needed help, and saw the victim's body lying in the road.

As Officer Baker drove on Summer Street and neared a four-way intersection, he observed "a large amount of lights, people, and a car parked in the middle of the road." He "turned [his] vehicle around," drove up East Hoosac Street, and saw a "2006 red Chevrolet HHR with the Massachusetts plate 376 matching" the description of the defendant's vehicle. Around this time a bystander yelled to Officer Baker, "[g]o get her," while another person said "that's her, that's her, get her" as the defendant's vehicle "was pulling away." According to Danforth, when Officer Baker arrived, it was "at that point" that the defendant "got into her car and started driving away." Danforth and others at the scene yelled to Officer Baker, and "then he proceeded to follow" the defendant. Officer Baker followed the red Chevrolet and stopped the vehicle.[1]

Next, Officer Baker approached the vehicle, saw the defendant sitting in the driver's seat, observed the keys in the ignition, and saw the defendant "put the vehicle into park." Officer Baker noticed that the defendant "had slurred speech, bloodshot, glassy eyes. Her speech was slurred, and [he] could smell a very strong alcoholic beverage smell coming from her

_____

[1] Officer Baker testified that he approached the red Chevrolet. It is unclear from his testimony whether he performed a motor vehicle stop, or whether he approached the vehicle after it had come to a stop. However, video footage submitted into evidence depicts Officer Baker effectuating a traffic stop.

3

person."  He also "noticed that her windshield had been smashed in."  He asked, "what happened to the windshield," and the defendant responded, "I didn't hit anybody."  The defendant was "[e]vasive, uncooperative at times" while Officer Baker spoke with her.  Based on his observations during their interaction, Officer Baker formed the opinion that she was intoxicated.  While he spoke with the defendant, Officer Baker "could hear screaming and yelling down the street," and thus placed the defendant in his police cruiser so that he could assist Officer Dabrowski who had arrived at the crime scene soon after Officer Baker.

Officer Baker ran down the street and encountered a chaotic scene where Officer Dabrowski "was trying to keep everybody calm."  Officer Baker saw the victim's body on the roadway adjacent to a blue Ford Focus.  The victim had "bright red blood coming from his face, head region . . . his legs appeared to be in unnatural positions."  The blue Ford Focus, which was identified as the victim's vehicle, "had scratches all down the side, and the mirror had been broken off."  After assisting in "back boarding" the victim and placing him in an ambulance that had arrived on the scene, Officer Baker returned to his cruiser. He saw the defendant still moving around in the back seat and left to collect evidence for a few minutes, but upon returning to the cruiser, he "found her breathing but unresponsive."

4

Eventually an ambulance came and transported the defendant to the hospital. Subsequent testing revealed the defendant to have a blood alcohol concentration of .14 percent.

The victim was taken to the hospital and died at Berkshire Medical Center one week after the crash. There was no dispute at trial that the defendant drove the red vehicle and struck and killed the victim. The defense was lack of criminal responsibility, and both parties called experts who testified to their opinions as to whether the defendant could appreciate the criminality of her acts or conform to the law.[2]

Discussion. 1. Consciousness of guilt instruction. The defendant argues that the judge abused his discretion in providing a consciousness of guilt instruction to the jury. Where, as here, the defendant did not object to the giving of the instruction, or the content thereof, our review is limited to whether there was any error, and if so, whether that error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

"Consciousness of guilt instructions are permissible when there is an 'inference of guilt that may be drawn from evidence of flight, concealment, or similar acts.'" Commonwealth v.

_____

[2] There was evidence that the defendant had attempted suicide several times, and suffered from, inter alia, "major depressive disorder" and "possible personality disorder with borderline paranoid and avoidant features."

5

Stuckich, 450 Mass. 449, 453 (2008), quoting Commonwealth v. Toney, 385 Mass. 575, 584 & n.4 (1982). "False statements made to the police are a standard example of admissible evidence on consciousness of guilt." Commonwealth v. Carrion, 407 Mass. 263, 276 (1990).

The defendant argues that there was no evidence in this case that she made false statements to the police. We disagree. Asked by Officer Baker about the smashed windshield on her vehicle, the defendant responded that she "didn't hit anybody." Contrary to this statement, there was overwhelming evidence that the defendant struck the victim and caused his death. As the jury could infer that the defendant's statement was false, the judge did not err in giving a consciousness of guilt instruction. See Commonwealth v. Vick, 454 Mass. 418, 424-426 (2009). Likewise, eyewitnesses testified that the defendant drove away after striking the victim with her vehicle. Although she returned, as soon as a police cruiser came upon the scene she again entered her vehicle and drove away.[3] This evidence was

---

[3] Contrary to the defendant's claim on appeal, the video evidence from the camera in Officer Baker's police cruiser did not contradict the eyewitness testimony to the effect that the defendant left the scene at the time of the first officer's arrival. Rather, the video evidence, which was admitted in evidence and has been reviewed by this panel, shows the defendant's vehicle departing as soon as the cruiser driven by Office Baker approaches the area, and thus the video evidence tended to corroborate the eyewitness testimony.

sufficient to warrant a consciousness of guilt instruction.

Thus, there was no error.[4]  See Stuckich, 450 Mass. at 453.

2.  Bowden instruction.  The defendant also claims that

trial counsel rendered ineffective assistance by failing to

request an instruction pursuant to Commonwealth v. Bowden, 379

Mass. 472, 486 (1980).  The claim is unavailing.

To prevail on a claim of ineffective assistance of counsel,

the defendant must establish that there has been "serious

incompetency, inefficiency, or inattention of counsel --

behavior of counsel falling measurably below that which might be

expected from an ordinary fallible lawyer" and that, as a

result, she was "likely deprived . . . of an otherwise

available, substantial ground of defence."  Commonwealth v.

Saferian, 366 Mass. 89, 96 (1974).  See Commonwealth v. Millien,

474 Mass. 417, 432 (2016) (prejudice standard under second prong

of Saferian test met when reviewing court has "serious doubt

whether the jury verdict would have been the same had the

defense been presented").  The defendant did not raise this

claim through the preferred method of a motion for new trial

accompanied by affidavits, and thus presents a claim "in its

---

[4] The defendant also argues that the consciousness of guilt instruction failed to specify (1) the evidence on which the jury could rely and (2) the charges to which the instruction applied. The defendant cites no persuasive authority for the proposition that such detail is necessary, or that its absence is prejudicial.  The argument is thus unavailing.

weakest form[,] because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight" (quotation and citation omitted). Commonwealth v. Diaz, 448 Mass. 286, 289 (2007). "Because the defendant raises [this] claim[] for the first time on direct appeal, [its] factual basis must appear 'indisputably on the trial record' for us to resolve [it]." Commonwealth v. Vera, 88 Mass. App. Ct. 313, 323 (2015), quoting Commonwealth v. Dargon, 457 Mass. 387, 403 (2010). This is not such a case.

As the Supreme Judicial Court has held, "a judge is not required to instruct on the claimed inadequacy of a police investigation. 'Bowden simply holds that a judge may not remove the issue from the jury's consideration.'" Commonwealth v. Boateng, 438 Mass. 498, 506-507 (2003), quoting Commonwealth v. O'Brien, 432 Mass. 578, 590 (2000). In this case, "the judge did not remove the inadequacy of the police investigation from consideration by the jury and so complied fully with Bowden's only requirement." Commonwealth v. Williams, 439 Mass. 678, 687 (2003). See Commonwealth v. Bresilla, 470 Mass. 422, 439 (2015). Indeed, the defendant presented the issue of claimed inadequate police work through examination of witnesses and in her closing argument. There was no error. See Williams, supra ("There was no error because the giving of such an instruction

8

is never required").  See also <u>Commonwealth</u> v. <u>Gonsalves</u>, 99 Mass. App. Ct. 638, 644 (2021) (noting that the giving of a <u>Bowden</u> instruction is never required and thus counsel was not ineffective for failing to request one).

<u>Judgments affirmed</u>.

By the Court (Milkey, Massing & Neyman, JJ.[5]),

Assistant Clerk

Entered:  February 6, 2024.

---

[5] The panelists are listed in order of seniority.